**MAYER BROWN LLP**

Donald M. Falk (SBN 150256)
Two Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone:    (650) 331-2000
Facsimile:    (650) 331-4000

Andrew J. Pincus (*pro hac vice to be filed*)
Archis A. Parasharami (SBN 321661)
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone:    (202) 263-3000
Facsimile:    (202) 263-3300

*Attorneys for Plaintiffs Chamber of Commerce
Of the United States of America and California
Chamber of Commerce*

**LITTLER MENDELSON, P.C.**

Bruce J. Sarchet (SBN 121042)
Maurice Baskin (pro hac vice to be filed)
500 Capitol Mall, Suite 200
Sacramento, CA 95814
Telephone:    (916) 830-7200
Facsimile:    (916) 561-0828

*Attorneys for Plaintiffs National Retail
Federation, California Retailers Association
National Association of Security Companies
Home Care Association of America, and
California Association for Health Services
at Home*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, CALIFORNIA CHAMBER OF COMMERCE, NATIONAL RETAIL FEDERATION, CALIFORNIA RETAILERS ASSOCIATION, NATIONAL ASSOCIATION OF SECURITY COMPANIES, HOME CARE ASSOCIATION OF AMERICA, and CALIFORNIA ASSOCIATION FOR HEALTH SERVICES AT HOME,<br><br>Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as the Attorney General of the State of California, LILIA GARCIA BROWER, in her official capacity as the Labor Commissioner of the State of California, JULIE A. SU, in her official capacity as the Secretary of the California Labor and Workforce Development Agency, and KEVIN KISH, in his official capacity as Director of the California Department of Fair Employment and Housing of the State of California,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs the Chamber of Commerce of the United States of America ("U.S. Chamber"), the California Chamber of Commerce ("CalChamber"), the National Retail Federation ("NRF"), the California Retailers Association ("CRA"), the National Association of Security Companies ("NASCO"), the Home Care Association of America ("HCAOA"), and the California Association For Health Services At Home ("CAHSAH") (collectively, "Plaintiffs") bring this action against Xavier Becerra, in his official capacity as the Attorney General of the State of California, Lilia Garcia Brower, in her official capacity as the Labor Commissioner of the State of California, Julia A. Su, in her official capacity as the Secretary of the California Labor and Workforce Development Agency, and Kevin Kish, in his official capacity as Director of the California Department of Fair Employment and Housing (collectively, "Defendants"), alleging as follows:

## INTRODUCTION

1.    Plaintiffs file this action to enforce their members' rights under federal law, including the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), to enter into new arbitration agreements with workers without the threat of state-law restrictions that disfavor arbitration agreements and carry criminal penalties.

2.    Businesses routinely enter into arbitration agreements with workers, either as a condition of employment or on an opt-out basis, so that both parties can make use of alternative dispute resolution procedures.  As the Supreme Court of the United States has observed, "there are real benefits to the enforcement of arbitration provisions. . . . Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122-23 (2001).

3.    The Federal Arbitration Act "reflects an emphatic federal policy in favor of arbitral dispute resolution."  *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (per curiam) (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam)) (in turn quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).

4.    Arbitration ensures that the rights of individual employees under federal and state

anti-discrimination laws remain protected.  "The [U.S. Supreme] Court has been quite specific in holding that arbitration agreements can be enforced under the [Federal Arbitration Act] without contravening . . . policies . . . giving employees specific protection against discrimination[.]"  *Id.*

5.      Arbitration provides workers with a fair and effective means of resolving their disputes:

- Arbitration procedures are fair—the vast majority of agreements and the leading arbitration providers require fair procedures. And if an arbitration agreement prescribes unfair procedures, courts can and will refuse to enforce the agreement.

- Arbitration offers workers simple procedures that they can navigate even without a lawyer.

- That simplicity matters because many workers who have disputes are unable to secure legal representation, and their inability to obtain a lawyer creates insurmountable obstacles to bringing claims in court.

- Workers who brave the court system on their own find that their cases are long delayed by overcrowded dockets.

- Without arbitration, many workers will have no meaningful remedy at all.

- Studies show that workers who arbitrate are more likely to succeed on their claims than those who proceed in court, and to recover at least as much (if not more) money.

6.      Arbitration is faster than litigation in court.  As a recent study released by the U.S. Chamber's Institute for Legal Reform found, arbitration cases in which the employee brought the claim and prevailed took, on average, 569 days to complete, while cases in court required an average of 665 days.  Moreover, employees did better in arbitration than in court—in cases decided by an arbitrator or court (rather than settled), employees who filed claims won three times as often in arbitration—32% compared to 11%—and recovered an average award of $520,630 in arbitration compared to $269,885 in court.  *See* NDP Analytics, *Fairer, Faster, Better: An Empirical Assessment of Employment Arbitration* 5-10 (May 2019), *available at* https://www.instituteforlegalreform.com/uploads/sites/1/Empirical-Assessment-Employment-Arbitration.pdf.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

7.       Arbitration also lowers the costs of dispute resolution, which creates savings that in part can be passed on to workers through higher wages and consumers through lower prices.

8.       The California Legislature nonetheless enacted Assembly Bill 51 ("AB 51"), which forbids parties from agreeing to arbitrate a broad range of labor and employment discrimination claims as a condition of employment—and makes it a ***crime*** for businesses to do so.

9.       AB 51 is one of the Legislature's latest statutes seeking to prevent businesses and workers from entering into agreements to use arbitration to resolve disputes that may arise in the course of work-related relationships.

10.      The Governor of California signed AB 51 into law on October 10, 2019.  Effective January 1, 2020, AB 51 will forbid employers from offering and entering into arbitration agreements with their workers, even if the workers may opt out of arbitration.  *See* Cal. Labor Code § 432.6(a), (c) (added by Stats. 2019, ch. 711, § 3) (employer may not require employees or applicants "to waive any right, forum, or procedure" of the California Fair Housing and Employment Act ("FEHA") or California Labor Code as a "condition of employment" even if individual can "opt out"); Cal. Gov't Code § 12953 (added by Stats. 2019, ch. 711, § 3) (violation of Labor Code § 432.6 also violates FEHA).

11.      These restrictions are backed by criminal penalties.  Section 433 of the California Labor Code provides that it is a misdemeanor to violate the provisions of the article of the Labor Code governing contracts and applications for employment.  Because Section 432.6, added by AB 51, is part of that article, any violation of AB 51's restrictions will be a misdemeanor as well.

12.      In addition, because FEHA and the Labor Code provide for investigation and enforcement actions by California state departments and for lawsuits by individuals, AB 51's restrictions on arbitration are backed by substantial civil enforcement mechanisms.

13.      AB 51 thus places special restrictions—including the extraordinary burden of potential criminal liability—on businesses' ability to enter arbitration agreements with their workers.

14.      As a result, AB 51 will generate more litigation, impose significant delays in

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   California's justice system, and increase costs for businesses and workers alike.

2       15.   As explained in detail below, AB 51's limits on arbitration agreements conflict with

3   federal law.  Those limits are therefore preempted and invalid under the Supremacy Clause of the

4   Constitution of the United States.  Accordingly, Plaintiffs respectfully request that the Court (1)

5   grant a declaratory judgment that AB 51 is invalid with respect to all arbitration agreements

6   governed by the FAA and (2) issue an order permanently enjoining Defendants from enforcing it

7   with respect to such arbitration agreements.

8                                    **PARTIES**

9       16.   Plaintiff the Chamber of Commerce of the United States of America ("U.S.

10  Chamber") is the world's largest business federation, representing approximately 300,000 direct

11  members and indirectly representing an underlying membership of more than three million U.S.

12  businesses and professional organizations of every size and in every economic sector and

13  geographic region of the country.  The U.S. Chamber routinely advocates in federal and state courts

14  on matters of federal arbitration law, including by the filing of lawsuits challenging anti-business

15  laws and regulatory actions that restrict businesses from entering into and enforcing arbitration

16  agreements protected by federal law.  Many of the U.S. Chamber's members are employers of all

17  sizes—businesses and professional organizations—either headquartered or located in California

18  that enter into arbitration agreements with their workers as a condition of employment or require

19  workers who do not wish to arbitrate potential disputes to affirmatively opt out of arbitration.  In

20  bringing this lawsuit, the U.S. Chamber seeks to vindicate its own interests as well as the interests

21  of these members, who will be irreparably harmed by implementation of AB 51 and would

22  therefore have standing to sue in their own right.  It also more broadly seeks to vindicate the

23  interests of the entire business community that would be irreparably harmed if California were

24  permitted to bar pre-dispute employment arbitration agreements.  This suit is germane to the U.S.

25  Chamber's mission to foster economic growth throughout the country, including in California.

26  The U.S. Chamber seeks only declaratory and injunctive relief, and the individual members of the

27  U.S. Chamber are not indispensable to the proper resolution of the case.

28      17.   The California Chamber of Commerce ("CalChamber") is a not-for-profit

---

4

organization that seeks to transform California's business landscape through advocacy.   Its members consist of more than 14,000 California private-sector employers, who together employ more than one-fourth of the private sector workforce in California.   On behalf of its members, CalChamber advocates on behalf of California businesses before the California Legislature and California courts for pro-business measures that will foster economic growth.   CalChamber's mission is to enhance the California economy and make California a better place to live, work, and do business.   Many of CalChamber's members regularly rely on arbitration as a condition of employment or require workers who do not wish to arbitrate potential disputes to affirmatively opt out of arbitration.   In bringing this lawsuit, CalChamber seeks to vindicate its own interests as well as the interests of these members, who will be irreparably harmed by implementation of AB 51 and would therefore have standing to sue in their own right.   This suit is germane to CalChamber's mission to foster economic growth and a thriving business community in California.   CalChamber seeks only declaratory and injunctive relief, and the individual members of CalChamber are not indispensable to the proper resolution of the case.

18.    The NRF is the world's largest retail trade association, representing all aspects of the retail industry. NRF's membership includes discount and department stores, home goods and specialty stores, Main Street merchants, grocers, wholesalers, chain restaurants, and Internet retailers. Retail is the nation's largest private sector employer, supporting one in four U.S. jobs—42 million working Americans and contributing $2.6 trillion to annual GDP. Many NRF members are either headquartered or located in California, and they regularly rely on arbitration as a condition of employment or require workers who do not wish to arbitrate potential disputes to affirmatively opt out of arbitration.   In bringing this lawsuit, NRF seeks to vindicate its own interests as well as the interests of these members, who will be irreparably harmed by implementation of AB 51 and would therefore have standing to sue in their own right. This suit is germane to NRF's purpose of protecting its mission to foster economic growth and a thriving retail business community in California.   NRF seeks only declaratory and injunctive relief, and neither the claims asserted nor relief requested requires the participation of  individual NRF members.

19.    The CRA works on behalf of California's retail industry, which currently operates

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

over 418,840 retail establishments with a gross domestic product of $330 billion annually and employs more than 3 million people – one fourth of California's total employment. CRA is the only statewide trade association representing all segments of the retail industry, many of whose members regularly rely on arbitration as a condition of employment or require workers who do not wish to arbitrate potential disputes to affirmatively opt out of arbitration. In bringing this lawsuit, CRA seeks to vindicate its own interests as well as the interests of these members, who will be irreparably harmed by implementation of AB 51 and would therefore have standing to sue in their own right. This suit is germane to CRA's purpose of protecting its mission to foster economic growth and a thriving retail business community in California.  CRA seeks only declaratory and injunctive relief, and neither the claims asserted nor relief requested requires the participation of the individual CRA members.

20.    NASCO is the nation's largest contract security association, representing private security companies that employ more than 450,000 of the nation's most highly trained security officers servicing the public and private sector throughout the United States, and tens of thousands in California. On behalf of its members, NASCO monitors and participates in activities affecting private security companies and officers at the federal, state and local levels. A number of NASCO's members are either headquartered or located in California, and they regularly rely on arbitration as a condition of employment or require workers who do not wish to arbitrate potential disputes to affirmatively opt out of arbitration.  In bringing this lawsuit, NASCO seeks to vindicate its own interests as well as the interests of these members, who will be irreparably harmed by implementation of AB 51 and would therefore have standing to sue in their own right. This suit is germane to NASCO's purpose of protecting its mission to foster economic growth and the security industry in California.  NASCO seeks only declaratory and injunctive relief, and neither the claims asserted nor relief requested requires the participation of the individual NASCO members.

21.    The HCAOA is the home care industry's leading trade association – currently representing nearly 3,000 companies that employ more than 500,000 caregivers across the United States, many of whom are based in California.  HCAOA protects industry interests, promotes industry values, tackles barriers to growth and takes on industry-wide issues.  HCAOA is a

1    champion and advocate for its members, for caregivers, and for seniors in California and across

2    America. Many HCAOA members are either headquartered or located in California, and they

3    regularly rely on arbitration as a condition of employment or require workers who do not wish to

4    arbitrate potential disputes to affirmatively opt out of arbitration.  In bringing this lawsuit, HCAOA

5    seeks to vindicate its own interests as well as the interests of these members, who will be

6    irreparably harmed by implementation of AB 51 and would therefore have standing to sue in their

7    own right. This suit is germane to HCAOA's purpose of protecting its mission to foster economic

8    growth and the private home care community in California.  HCAOA seeks only declaratory and

9    injunctive relief, and neither the claims asserted nor relief requested requires the participation of

10   the individual HCAOA members.

11          22.    CAHSAH is a California non-profit mutual benefit corporation whose mission is to

12   promote quality home care and enhance the effectiveness of its members. CAHSAH comprises

13   and represents hundreds of members located throughout the State, as well as dozens of affiliates

14   providing health and supportive services and products in the home. Many of CAHSAH's members

15   regularly rely on arbitration as a condition of employment or require workers who do not wish to

16   arbitrate potential disputes to affirmatively opt out of arbitration. In bringing this lawsuit,

17   CAHSAH seeks to vindicate its own interests as well as the interests of these members, who will

18   be irreparably harmed by implementation of AB 51 and would therefore have standing to sue in

19   their own right. This suit is germane to CAHSAH's purpose of protecting its mission to foster

20   economic growth in the home care and hospice community in California.  CAHSAH seeks only

21   declaratory and injunctive relief, and neither the claims asserted nor relief requested requires the

22   participation of the individual CAHSAH members.

23          23.    Defendant Xavier Becerra is the Attorney General of California.  The Attorney

24   General is charged with enforcing California's criminal laws.  Mr. Becerra is sued in his official

25   capacity only.  The main office of the California Attorney General is located in Sacramento,

26   California, within the Eastern District of California.

27          24.    Defendant Lilia Garcia Brower is the California Labor Commissioner.  The Labor

28   Commissioner's Office, also known as the Division of Labor Standards Enforcement ("DLSE"),

1    is charged with enforcing California's labor laws.  Ms. Brower is sued in her official capacity only.

2    The main office of the California Labor Commissioner is located in Oakland, California, within

3    the Northern District of California.

4         25.    Defendant Julie A. Su is the Secretary of the California Labor and Workforce

5    Development Agency.  The Labor and Workforce Development Agency oversees all California

6    state departments and boards that enforce California labor laws, including the DLSE.  Ms. Su is

7    sued in her official capacity only.  The main office of the California Labor and Workforce

8    Development Agency is located in Sacramento, California, within the Eastern District of

9    California.

10        26.    Defendant Kevin Kish is the Director of the California Department of Fair

11   Employment and Housing.  The California Department of Fair Employment and Housing is

12   charged with enforcing California's civil rights laws.  Mr. Kish is sued in his official capacity only.

13   The main office of the California Department of Fair Employment and Housing is located in Elk

14   Grove, California, within the Eastern District of California.

15                           **JURISDICTION AND VENUE**

16        27.    This Court has jurisdiction over this action under 28 U.S.C. § 1331, because one of

17   Plaintiffs' claims arises under 42 U.S.C. § 1983, which provides that "[e]very person who, under

18   color of any statute . . . of any State . . . , subjects, or causes to be subjected, any citizen of the

19   United States or other person within the jurisdiction thereof to the deprivation of any rights,

20   privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured

21   in an action at law, suit in equity, or other proper proceeding for redress."

22        28.    As discussed below, AB 51, which the Defendants are responsible for enforcing,

23   violates the Federal Arbitration Act, and thereby deprives Plaintiffs and their members of

24   enforceable "rights" secured by that federal law.

25        29.    In addition, this Court has jurisdiction under 28 U.S.C. § 1331 because AB 51 is

26   preempted by the Federal Arbitration Act, so that enforcement of AB 51 by the Defendants would

27   violate the Supremacy Clause, and thus may be enjoined under established principles of equity.

28   *See Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1384 (2015).

30.   This Court similarly has the power to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

31.   Venue lies in this judicial district under 28 U.S.C. § 1391(b)(1) because at least one Defendant resides in this district and all Defendants are residents of the State of California.

## BACKGROUND AND FACTUAL ALLEGATIONS

### The Federal Arbitration Act Preempts State
### Laws Disfavoring The Formation Or Enforcement of Arbitration Agreements

32.   Section 2 of the Federal Arbitration Act states that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

33.   Section 2 directs that "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006), and *Volt Information Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). That provision requires enforcement of arbitration agreements unless they are the product of fraud or "unconscionability" or otherwise unenforceable as a matter of generally applicable contract law (*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (quoting *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987)), so long as that state law does not interfere with the purposes and objectives of the FAA.

34.   Thus, the Supreme Court has repeatedly held that state laws that single out arbitration agreements for disfavored treatment are preempted. *See, e.g.*, *Doctor's Associates*, 517 U.S. at 688; *Kindred Nursing Centers Limited Partnership v. Clark*, 137 S. Ct. 1421 (2017). Indeed, it has specifically recognized that California Labor Code provisions that disfavor arbitration are preempted. *See Preston v. Ferrer*, 552 U.S. 346 (2008); *Perry v. Thomas*, 482 U.S. 483 (1987).

35.   The Supreme Court has explained that the FAA preempts both any State rule that

1   "discriminates on its face against arbitration" along with any rule "that covertly accomplishes the

2   same objective by disfavoring contracts that . . . have the defining features of arbitration

3   agreements." *Kindred*, 137 S. Ct. at 1426.

4          36.    The FAA similarly preempts any state law "lodging primary jurisdiction in another

5   forum, whether judicial or administrative." *Preston*, 552 U.S. at 350 (holding that FAA preempted

6   law requiring submission of certain disputes to the California Labor Commissioner).

7          37.    Further, the U.S. Supreme Court has held that the FAA preempts state law rules

8   that disfavor arbitration in connection with the formation of a contract as well as rules that disfavor

9   the enforcement of arbitration agreements.  *Kindred*, 137 S. Ct. at 1428.  Restrictions that single

10  out arbitration agreements or derive their meaning from that fact that an agreement to arbitrate is

11  at issue "flout the FAA's command to place those agreements on equal footing with other

12  contracts" and are therefore preempted.  *Id.*

13  **AB 51 Restricts the Ability of Businesses and Workers to Enter Arbitration Agreements**

14         38.    AB 51 purports to ban agreements to resolve disputes through arbitration as a

15  condition of employment or the receipt of employment benefits. But employers may include in

16  employment contracts a wide variety of other types of provisions governing the employer-

17  employee relationship.

18         39.    AB 51 represents California Legislature's most recent attempt to restrict

19  employment arbitration.  Last year, the Legislature passed AB 3080, which had provisions almost

20  identical to those in AB 51that prohibit arbitration as a condition of employment.  *See* California

21  AB 3080 (Employment Discrimination: enforcement), 2017-2018 Reg. Sess. (September 30,

22  2018).  Governor Jerry Brown vetoed AB 3080, however, explaining that it "plainly violates

23  federal law."   Governor's Veto Message, AB 3080 (Sept. 30, 2018), available at

24  http://leginfo.legislature.ca.gov/faces/billStatusClient.xhtml?bill_id=201720180AB3080.

25  Governor Brown's veto message explained that AB 3080 was "based on a theory that the Act only

26  governs the enforcement and not the initial formation of arbitration agreements and therefore

27  California is free to prevent . . . arbitration agreements from being formed at the outset. The

28  Supreme Court has made it explicit this approach is impermissible."  *Id.* (citing *Kindred*, 137 S.

1  Ct. at 1428).

2      40.     One year later, the Legislature nonetheless passed AB 51.  The current Governor

3  of California signed AB 51 into law on October 10, 2019.  *See* California AB 51 (Employment

4  Discrimination: enforcement), 2019-2020 Reg. Sess. (October 10, 2019), Stats. 2019, §§ 2-3 (to

5  be codified at Sec. 12953 of the California Government Code and Sec. 432.6 of the California

6  Labor Code).  This Complaint cites the new sections as they will be codified.

7      41.     AB 51 will amend both the Labor Code, which governs workplace rights, and

8  FEHA (Cal. Gov't Code § 1900 et seq.), which includes protections against workplace

9  discrimination.

10      42.     AB 51 applies to contracts for employment entered into, modified, or extended on

11  or after January 1, 2020.  Cal. Lab. Code § 432.6(h).

12      43.     The Senate and Assembly Floor analyses for AB 51 underscore that AB 51 is

13  specifically targeted to preclude the use of arbitration agreements as a condition of employment.

14   • The author of AB 51 stated that the bill is needed to address what the author calls

15      "forced arbitration."  California AB 51 (Employment Discrimination: enforcement),

16      2019-2020 Reg. Sess., Senate Rules Committee Analysis 3-4 (as amended March 26,

17      2019) (Third Reading – Prepared on September 1, 2019), available at

18      https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=

19      201920200AB51.

20   • The Senate analysis states that the law is designed to combat "the specter of mandatory

21      labor law arbitration serving [as an] employer-funded extrajudicial system that

22      undermines California's labor law protections and places the aggrieved worker at a

23      fundamental and inherent disadvantage."  *Id.* at 5.

24   • The Assembly analysis likewise acknowledges that the law targets "[t]he use of

25      mandatory arbitration agreements in the employment context."  California AB 51

26      (Employment Discrimination: enforcement), 2019-2020 Reg. Sess., Assembly Floor

27      Analysis 1 (as amended March 26, 2019) (Third Reading – Prepared on May 21, 2019),

28      available at https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

201920200AB51.

44.     AB 51 will amend the California Labor Code by adding Section 432.6 to the article governing Contracts and Applications for Employment.  *See* Cal. Lab. Code, Div. 2, Pt. 1, Ch. 3, Art. 3.

45.     Section 432.6 will prohibit employers from requiring any employee or applicant to "waive any right, forum or procedure for a violation of any provision" of FEHA or the Labor Code "as a condition of employment, continued employment, or the receipt of any employment-related benefit."  Cal. Lab. Code § 432.6(a).

46.     Section 432.6 expressly provides that employers cannot require employees to waive "*the right to file and pursue a civil action* or a complaint with, or otherwise notify any state agency, other public prosecutor, law enforcement agency, or any *court* or governmental agency" for any alleged violation of FEHA or the Labor Code.  *Id.* (emphasis added).

47.     Also under Section 432.6, "an agreement that requires an employee to opt out of [such] a waiver or take any affirmative action in order to preserve their rights [described in Section 432.6(a)] is deemed a condition of employment," as if the ability to opt out gave the workers no choice.  *Id.* § 432.6(c).

48.     Under an existing provision of the Labor Code, employers who violate these restrictions are guilty of a criminal misdemeanor (Cal. Lab. Code § 433), which is punishable by imprisonment not exceeding six months, a fine not exceeding $1,000, or both (*id.* § 23).

49.     The California Attorney General is responsible for enforcing California's criminal laws.  Cal. Gov't Code §§ 12550, 26500.

50.     In addition, as with most employment provisions of the Labor Code, the provisions of Section 432.6 are enforced by the Labor Commissioner, who acts through the Division of Labor Standards Enforcement ("DLSE").  *See* Cal. Lab. Code § 95 ("The division may enforce the provisions of this code and all labor laws of the state the enforcement of which is not specifically vested in any other officer, board or commission"); *id.* § 98 (the Labor Commissioner may investigate employee complaints).

51.     Many provisions of the Labor Code also may be enforced by private plaintiffs

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  through ordinary civil litigation or under the Private Attorneys General Act, Cal. Labor Code

2  § 2698 *et seq.*

3      52.    Workers who win claims against employers under Section 432.6(d) will be entitled

4  to injunctive relief and reasonable attorney fees.  Cal. Lab. Code § 432.6(d).

5      53.    AB 51 also amends the FEHA by adding Section 12953.  Section 12953 provides

6  that any violation of Section 432.6 in the Labor Code will be an "unlawful employment practice"

7  under FEHA.  Cal. Gov't Code § 12593.

8      54.    Section 12953 creates an independent route to enforcement for any violation of

9  Section 432.6 by both the California Department of Fair Employment and Housing and private

10  parties.  Specifically, FEHA provides procedures for individuals claiming to be "aggrieved by an

11  alleged unlawful practice" to file complaints with the California Department of Fair Employment

12  and Housing.  Cal. Gov't Code § 12960.  If the Department does not bring a civil action within

13  150 days after the filing of a complaint, the Department will issue a right-to-sue notice to the

14  complainant, who can then bring a civil action against the employer.  *Id.* § 12965.

15      55.    AB 51 restricts employers' ability to enter into arbitration agreements with workers

16  for a sweeping number of claims.

17      56.    FEHA creates rights with respect to a variety of employment practices.  *See, e.g.*,

18  Cal. Gov't Code § 12945.6 (parental leave); *id.* § 12945 (employee rights related to pregnancy,

19  childbirth, and medical conditions); *id.* § 12948 (denial of civil rights as an unlawful practice).

20      57.    And the Labor Code covers a broad range of wage, hour, and other employment-

21  related claims.  *See, e.g.*, Cal. Lab. Code § 210 (civil penalties against employers for failure to pay

22  employee wages); *id.* § 246.5(c) (employee right to sick leave); *id.* § 98.6 (employee whistleblower

23  protections).

24      58.    The statutes also provide workers a mechanism to pursue certain civil actions

25  against employers in court.  *See, e.g.*, Cal. Gov't Code § 12965; Cal. Labor Code § 98.2; § 226;

26  §§ 2698-2699.6.

27      59.    Effective January 1, 2020, AB 51 will prevent employers and workers from

28  agreeing in advance to arbitrate **any** of these claims, even if the workers have the ability to opt out

1    of arbitration.

2        60.    AB 51 thereby selects a defining feature of arbitration agreements—"a waiver of

3    the right to go to court"—and on the basis of that feature "impede[s] the ability" of employers to

4    enter arbitration agreements. *Kindred*, 137 S. Ct. at 1427, 1429; *see also Preston*, 552 U.S. at 349-

5    50, 354-56 (same principles apply to right to an administrative adjudication).

6        61.    In an effort to salvage the statute from federal preemption, the California

7    Legislature included language in AB 51 stating that the statute is not "intended to invalidate a

8    written arbitration agreement that is otherwise enforceable under the Federal Arbitration Act."

9    Cal. Labor Code § 432.6(f); *see also* Senate Floor Analysis, *supra*, at 4-5 (arguing that "AB 51

10   seeks to sidestep the preemption issue" and "falls outside the purview of the FAA" because it

11   "regulates employer behavior prior to an agreement being reached," rather than invalidating an

12   agreement once formed).

13       62.    That language does not lessen the conflict between AB 51 and the FAA. Regardless

14   of the status of an arbitration agreement once formed, AB 51 outlaws their formation by penalizing

15   employers—including exposing them to potential criminal liability—for entering into such an

16   agreement.  Yet, as the U.S. Supreme Court has explained, the FAA protects against not only

17   discriminatory rules regarding the enforcement of arbitration agreements, but also rules

18   "governing what it takes to enter into them." *Kindred*, 137 S. Ct. at 1428.  The California

19   Legislature has thus done exactly what binding precedent forbids: it has attempted "to undermine

20   the [FAA]—indeed, to wholly defeat it," by subjecting arbitration agreements, "by virtue of their

21   defining trait, to uncommon barriers" governing their formation.  *Id.* at 1427-28.

22       63.    In the alternative, this language on its own terms precludes application of the statute

23   to any arbitration agreement governed by the FAA.  Section 432.6(f) purports not to "invalidate"

24   arbitration agreements governed by the FAA.  But again, as the U.S. Supreme Court explained in

25   *Kindred*, the "validity" of arbitration agreements includes "their initial validity—that is, . . . what

26   it takes to enter into them."  137 S. Ct. at 1428 (quotation marks and alterations omitted).

27   Accordingly, 432.6(f) precludes enforcing the other provisions of AB 51 against an employer that

28   enters into arbitration agreements governed by the FAA, because declaring it unlawful to enter

into such agreements—subjecting the employer to liability and potential criminal and civil penalties—"invalidates" those agreements by foreclosing a previously permissible means of "what it takes to enter into them."

**The California Labor Commissioner and Director of the Department of Fair Employment and Housing Will Actively Enforce AB 51 Against California Employers**

64.     California employers face a real and imminent threat that AB 51 will be vigorously enforced.

65.     First, the policy agenda of the Legislature and Governor includes impeding the formation and enforcement of arbitration agreements.

66.     At the same time the Legislature passed AB 51, it also passed SB 707, which the Governor signed into law on October 13, 2019.  *See* California SB 707 (Arbitration Agreements: enforcement), 2019-2020 Reg. Sess. (October 13, 2019) (to be codified at Cal. Code Civ. Proc. §§ 1280, 1281.96-.99).

67.     SB 707 amends the California Code of Civil Procedure to hold employers in default and in material breach of employment and consumer arbitration agreements if they fail to pay arbitration fees necessary to commence or continue an arbitration within 30 days after such fees are due.  Cal. Code Civ. Proc. §§ 1281.97; 1281.98.

68.     Under California contract law generally, in contrast, the materiality of any given breach is determined through a fact-specific analysis based on "[t]he circumstances of each case," rather than an automatic rule.  *See, e.g.*, *Coughlin v. Blair*, 41 Cal. 2d 587, 599 (1953) (Traynor, J.); *Sackett v. Spindler*, 248 Cal. App. 2d 220, 229 (1967) (listing factors); *see also* Witkin, Summary of California Law, Contracts §§ 877, 883 (11th ed. 2019) (explaining fact-specific analysis under California law for determining whether a party is in material breach).

69.     Drafting parties found in violation of SB 707 will be subject to mandatory monetary sanctions, as well as discretionary evidentiary and contempt sanctions.  Cal. Code Civ. Proc. §§ 1281.99(a), (b).

70.     In addition, the statute declares that, by failing to pay fees within 30 days, the employer waives its right to compel arbitration.  Cal. Code Civ. Proc. §§ 1281.97; 1281.98.

71.     These penalties can be imposed even if the employer failed to pay only a small portion of the required fees, and will significantly deter employers from entering arbitration agreements or compelling arbitration.

72.     The contemporaneous passage of multiple pieces of legislation singling out arbitration for adverse treatment shows that deterring the use of arbitration agreements is a key goal for the current California Legislature and government.

73.     Based on the legislative activity described above, and the Governor's decision to approve both AB 51 and SB 707, it is highly likely that the pertinent enforcement agencies will vigorously enforce AB 51.

74.     The California government enforces criminal violations through the Office of the Attorney General and the numerous District Attorneys acting under his direct supervision.  Cal. Gov't Code §§ 12550, 26500.

75.     The Department of Fair Employment and Housing is responsible for enforcing FEHA, and is tasked with investigating employment discrimination complaints and enforcing employment discrimination laws by prosecuting alleged violations in civil court.

76.     FEHA requires the Department to "make prompt investigation" into employee complaints alleging violations of FEHA.  Cal. Gov't Code § 12963.  If the Director determines that a Complaint is valid, it must "immediately endeavor to eliminate the unlawful employment practice complained of by conference, conciliation, and persuasion."  *Id.* § 12963.7.  If these measures fail, the Director is empowered to bring a civil action on behalf of the person aggrieved.  *Id.* § 12965.

77.     Employees alleging violations of FEHA may also bring civil suits in the superior courts of California, either 150 days after filing a complaint with the Department or if the Department determines not to bring a civil action before the 150-day period has run.  Cal. Gov't Code § 12965(b).

78.     The California Labor Commissioner through the Division of Labor Standards Enforcement within the California Labor and Workforce Development Agency generally enforces the provisions of the California Labor Code.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    79.    Employees may file complaints alleging violations of the Labor Code with the

2    DLSE, which investigates employee complaints and issues orders and awards related to violations

3    of the Labor Code. *See* Cal. Labor Code § 98.1.  Either party can appeal DLSE orders and awards

4    to superior courts.  *Id.* § 98.2.

5    80.    The Labor Code also contains provisions for employees to directly bring suits in

6    court for certain violations of the Labor Code.  *Id.* §§ 2698-2699.6.

7    81.    The Department of Fair Employment and Housing regularly and vigorously

8    enforces the FEHA. In 2010 alone, the Department of Fair Employment and Housing recorded

9    43,208 filed cases related to employment actions.  California Department of Fair Employment and

10   Housing: Employment Filed Cases: Count of Alleged Acts (December 22, 2011),

11   https://www.dfeh.ca.gov/wp-content/uploads/sites/32/2017/06/CY_01-12_Cases_Filed_by_Act-

12   Emp.pdf.

13   82.    The California Labor Commissioner's Office also engages in robust enforcement

14   of California's labor laws and regularly takes enforcement actions against employers.  *See, e.g.*,

15   Press Release Number: 2019-83, State of California Department of Industrial Relations, *California*

16   *Labor Commissioner's Office Cites Inventory Company, Grocers More than $1.6 Million for Wage*

17   *Theft Violations*.

18   83.    The Attorney General, DLSE, and Department of Fair Employment and Housing

19   are highly likely to enforce AB 51 against Plaintiffs' members.

20                    **AB 51 Will Harm California Businesses And Their Workers**

21   84.    Plaintiffs' members and other California businesses as well as workers throughout

22   the State will suffer irreparable harm if AB 51 is allowed to stand.

23   85.    Many companies that are members of the Plaintiff associations regularly contract

24   with workers to enter into arbitration agreements as a condition of employment or receipt of

25   employment-related benefits.  Many also use contractual provisions in employment contracts that

26   offer employees the choice to affirmatively opt out of arbitration agreements, but set arbitration as

27   the default method for dispute resolution of workplace-related claims.

28   86.    Many of these members intend to continue to enter into arbitration agreements with

1   workers after January 1, 2020, in reliance on the FAA and U.S. Supreme Court decisions

2   interpreting that statute.

3        87.   If these members fail to comply with AB 51 because they believe it is preempted

4   under federal law, they will subject themselves to investigations and enforcement actions by the

5   Division of Labor Standards Enforcement and the Department of Fair Employment and Housing.

6   In addition, members that violate AB 51 are subject to criminal prosecution, facing the risk of

7   imprisonment of up to six months and a $1,000 fine.  Cal. Gov't Code §§ 23, 433.

8        88.   On the other hand, employers that choose to comply with AB 51 out of fear of

9   lawsuits and civil and criminal enforcement actions will have to forgo their rights under the Federal

10  Arbitration Act to enter into arbitration agreements with their employees.

11       89.   These members will be required to change their current employment practices.

12  They will no longer be able to enter into arbitration agreements with workers as a condition of

13  employment.  And they will no longer be able to rely on voluntary arbitration by providing workers

14  with the opportunity to opt out of arbitration agreements.  This will require them to change their

15  standard employment agreements and incur the immediate expense of drafting and printing.

16       90.   In addition, the only practical approach for employers to ensure compliance with

17  AB 51 is to cease entering into arbitration agreements with their employees altogether.  While the

18  California Legislature declared that AB 51 purports not to affect "voluntary" arbitration

19  agreements (AB 51 § 1(b)), the statute does not define the term or what it means to be a "condition

20  of employment, continued employment, or receipt of any employment-related benefit" (Cal. Labor

21  Code § 432.6(a))—except to *exclude* voluntary opt-outs and treat them as if they were not

22  voluntary.  Accordingly, the risk that a court or other decisionmaker will conclude that a contract

23  formation process is not sufficiently "voluntary"—subjecting the employer to potential criminal

24  and civil penalties—will lead employers simply to stop offering arbitration agreements to their

25  employees.

26       91.   Under any course employers select, AB 51 makes it more difficult for employers

27  to access the benefits of arbitration.  That result will push more cases into the slower and more

28  expensive court system, resulting in increased delays in accessing justice.

92.     This diversion to the court system harms businesses and their workers alike, because arbitration is a fair and more convenient and efficient mechanism for resolving workplace disputes.

93.     Arbitration is also procedurally simpler, which reduces the burden on both parties. Indeed, arbitration's simplified procedures often allow individuals to proceed without a lawyer. *See, e.g.*, Jason Scott Johnston & Todd Zywicki, *The Consumer Financial Protection Bureau's Arbitration Study: A Summary and Critique* 25-26, Mercatus Working Paper, Mercatus Center at George Mason University, Arlington, VA (Aug. 2015) ("hiring an attorney . . . is often unnecessary [in arbitration]").  This aspect of arbitration is particularly beneficial to workers with smaller claims, such as a dispute over a small amount of unpaid overtime.  It may not be cost-effective to pay a lawyer on an hourly or flat-fee basis to pursue these claims in court.  And the small stakes would make lawyers unwilling to take the case for a contingency fee.  Yet the complexities of judicial litigation make pursuit of these claims on a *pro se* basis impossible.

94.     Plaintiffs' members in California will also face increased legal costs if AB 51 goes into effect.  Arbitration is a cheaper and more efficient means of resolving disputes than litigation in court.  Thus, if businesses cannot use arbitration to resolve employee disputes, their legal costs will increase as those disputes are moved into the court system.

95.     Finally, the increased cost of administering and responding to workplace disputes will reduce businesses' ability to provide workers with higher compensation and to reduce costs to consumers.  This predictable consequence may impose a financial burden on workers across California.  And because AB 51 also prohibits businesses from paying higher compensation or any other benefit to workers as an incentive to agree to arbitrate (Cal. Labor Code § 432.6(a)), AB 51 will reduce competition for compensation, thus depressing compensation for workers generally.

96.     The burdens that AB 51 will impose are not necessary to protect workers from discrimination.  Arbitration has been repeatedly shown to be fair to both sides and preferable to court proceedings.  As noted above, a recent study demonstrated that in cases decided on the merits, employees recovered ***more*** on average in arbitration—and did so in less time—than in court litigation.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# CAUSES OF ACTION

## COUNT I: Preemption
### 42 U.S.C. § 1983

97.     Plaintiffs repeat and re-allege paragraphs 1-96 as if set forth fully herein.

98.     Under the Supremacy Clause of the Constitution, the "laws of the United States . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  As a consequence, any state law that "conflicts with § 2 of the Federal Arbitration Act … violates the Supremacy Clause." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) (provision of California Corporations Code preempted); *see Preston*, 552 U.S at 353 ("The FAA's displacement of conflicting state law is 'now well-established.'"). In addition, any state laws that "stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," as expressed in federal law, are preempted and invalid.  *See, e.g.*, *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 31 (1996) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

99.     As Supreme Court precedent makes clear, state laws that purport to render arbitration agreements covered by the FAA unlawful because improperly formed conflict with the FAA and are preempted, except to the extent that such laws fall within the Act's savings clause.

100.    The savings clause, contained in Section 2 of the FAA, permits arbitration agreements to be invalidated only based upon generally applicable "grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

101.    In addition, state-law rules that interfere with a fundamental characteristic of arbitration, such as waiver of the right to trial by jury, conflict with the FAA and are therefore preempted.  *Concepcion*, 563 U.S. at 341-44.

102.    AB 51 singles out arbitration for disfavored treatment by imposing special restrictions on the formation of arbitration agreements, which do not apply to other types of contracts, and limit the ability of employers and workers to enter arbitration agreements.  These requirements are not generally imposed to enter other provisions in employment contracts.  Indeed, employers routinely condition employment on acceptance of other contractual terms.

103.    AB 51 thus conflicts with—and also stands as an obstacle to—Congress's objectives in enacting the FAA.  It is therefore preempted.

104.    Under 42 U.S.C. § 1983, this Court has the power to enforce the rights of Plaintiffs' members under the Federal Arbitration Act and to enter an injunction precluding Defendants from enforcing AB 51.

## COUNT II: Equitable Relief

105.    Plaintiffs repeat and re-allege paragraphs 1-104 as if set forth fully herein.

106.    For the reasons discussed above, AB 51 violates the Federal Arbitration Act, and thereby deprives plaintiffs and their members of enforceable "rights" secured by that federal law.

107.    Federal courts of equity have the power to enjoin unlawful actions by state officials. Such equitable relief has traditionally been available in the federal courts to enforce federal law.

108.    The California Attorney General, California Division of Labor Standards Enforcement and California Department of Fair Employment and Housing are charged with enforcing AB 51.

109.    This Court can and should exercise its equitable power to enter an injunction precluding the Defendants from enforcing AB 51.

## COUNT III: Declaratory Relief

110.    Plaintiffs repeat and re-allege paragraphs 1-109 as if set forth fully herein.

111.    For the reasons discussed above, AB 51 violates the Federal Arbitration Act, and thereby deprives plaintiffs and their members of enforceable "rights" secured by that federal law.

112.    With exceptions not relevant here, in any "case of actual controversy within [their] jurisdiction," federal courts have the power to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

113.    This Court can and should exercise its equitable power to enter a declaration stating that the Federal Arbitration Act preempts AB 51 as applied to arbitration agreements within the scope of the federal act, or in the alternative, that the text of AB 51 itself precludes application of the statute to the formation and enforcement of arbitration agreements that are covered by the FAA.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A.      Declare that AB 51 is preempted by the Federal Arbitration Act and therefore invalid as applied to arbitration agreements that are covered by the FAA, or in the alternative, that the text of AB 51 itself precludes application of the statute to formation and enforcement of arbitration agreements that are covered by the FAA;

B.      Preliminarily and permanently enjoin the California Attorney General, California Division of Labor Standards Enforcement and California Department of Fair Employment and Housing from enforcing AB 51 as applied to arbitration agreements that are covered by the FAA;

C.      Enter judgment in favor of Plaintiffs;

D.      Award Plaintiffs their costs and attorneys' fees incurred in bringing this action; and

E.      Grant Plaintiffs such other relief as the Court deems just and proper.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

2
Dated: December 6, 2019                         Respectfully submitted,

3
                                                By:  */s/* Donald M. Falk
                                                      Donald M. Falk

4
                                                Donald M. Falk (SBN 150256)
5                                               Two Palo Alto Square
                                                3000 El Camino Real
6                                               Palo Alto, CA 94306-2112
                                                (650) 331-2000
7                                               (650) 331-4000 (fax)
                                                dfalk@mayerbrown.com

8
                                                Andrew J. Pincus*
9                                               Archis A. Parasharami (SBN 321661)
                                                MAYER BROWN LLP
10                                              1999 K Street NW
                                                Washington, DC 20006
11                                              (202) 263-3000
                                                (202) 263-3300 (fax)
12                                              apincus@mayerbrown.com
                                                aparasharami@mayerbrown.com

13
                                                *Counsel for Plaintiffs Chamber of Commerce of the*
14                                              *United States of America and California Chamber*
                                                *of Commerce*

15
                                                Erika C. Frank (SBN 221218)
16                                              CALIFORNIA CHAMBER OF COMMERCE
                                                1215 K Street, Suite 1400
17                                              Sacramento, CA 95814
                                                (916) 444-6670
18                                              (916) _____ (fax)
                                                erika.frank@calchamber.com

19
                                                *Counsel for Plaintiff California Chamber of*
20                                              *Commerce*

21
                                                Steven P. Lehotsky*
22                                              Jonathan Urick*
                                                U.S. CHAMBER LITIGATION CENTER
23                                              1615 H Street, NW
                                                Washington, DC 20062
24                                              (202) 463-5337
                                                (202) 463-5346 (fax)
25                                              slehotsky@uschamber.com

26                                              *Counsel for Plaintiff Chamber of Commerce of the*
                                                *United States of America*

27
                                                Bruce J. Sarchet (SBN 121042)
28                                              Maurice Baskin*
                                                LITTLER MENDELSON, P.C.
                                                500 Capitol Mall, Suite 2000

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Sacramento, CA 95814
(916) 830-7200
(916) 561 0828
bsarchet@littler.com
mbaskin@littler.com

*Counsel for Plaintiffs National Retail Federation,
California Retailers Association, National
Association of Security Companies, Home Care
Association of America, and California Association
for Health Services at Home*

*\* Motion for Admission Pro Hac Vice To Be Filed*