**MAYER BROWN LLP**

Donald M. Falk (SBN 150256)
Two Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone:   (650) 331-2000
Facsimile:   (650) 331-4000

Andrew J. Pincus (*pro hac vice to be filed*)
Archis A. Parasharami (SBN 321661)
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone:   (202) 263-3000
Facsimile:   (202) 263-3300

*Attorneys for Plaintiffs Chamber of Commerce
Of the United States of America and California
Chamber of Commerce*

**LITTLER MENDELSON, P.C.**

Bruce J. Sarchet (SBN 121042)
Maurice Baskin (*pro hac vice to be filed*)
500 Capitol Mall, Suite 200
Sacramento, CA 95814
Telephone:   (916) 830-7200
Facsimile:   (916) 561-0828

*Attorneys for Plaintiffs National Retail
Federation, California Retailers Association
National Association of Security Companies
Home Care Association of America, and
California Association for Health Services
at Home*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA,
CALIFORNIA CHAMBER OF COMMERCE,
NATIONAL RETAIL FEDERATION,
CALIFORNIA RETAILERS ASSOCIATION,
NATIONAL ASSOCIATION OF SECURITY
COMPANIES, HOME CARE ASSOCIATION
OF AMERICA, and CALIFORNIA
ASSOCIATION FOR HEALTH SERVICES
AT HOME,

Plaintiffs,

v.

XAVIER BECERRA, in his official capacity as
the Attorney General of the State of California,
LILIA GARCIA BROWER,
in her official capacity as the Labor
Commissioner of the State of California, JULIE
A. SU, in her official capacity as the Secretary
of the California Labor and Workforce
Development Agency, and KEVIN KISH, in his
official capacity as Director of the
Department of Fair Employment and Housing of
the State of California.

Defendants.

Case No.  2:19-cv-02456-KJM-DB

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION**

Date: January 10, 2020
Time: 10:00 a.m.
Courtroom: 3, 15th Floor

Hon. Kimberly J. Mueller

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ............................................................................................................... 3

    A.    Plaintiffs' members rely on agreements with their workers so that all
parties have access to the benefits of arbitration. .................................................. 3

    B.    The California Legislature seeks to restrict employment arbitration
practices. .............................................................................................................. 5

    C.    The Governor signs AB 51 into law. ........................................................................ 7

        (1)    AB 51's amendment to the Labor Code. .......................................................... 7

        (2)    AB 51's amendment to FEHA. ....................................................................... 8

    D.    Businesses face a genuine threat of civil and criminal enforcement of
AB 51. .................................................................................................................. 8

ARGUMENT .................................................................................................................... 9

    A.    Plaintiffs Are Likely To Succeed On The Merits. .................................................... 9

    B.    Plaintiffs Will Suffer Imminent Irreparable Harm In The Absence Of A
Preliminary Injunction. ........................................................................................ 13

    C.    The Balance Of Hardships And The Public Interest Weigh Sharply In
Plaintiffs' Favor. ................................................................................................. 17

CONCLUSION ................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajamian v. CantorCO2e, LP,*
    203 Cal. App. 4th 771 (2012) ...............................................................................15

*All. For the Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011) ...............................................................................9

*Allied-Bruce Terminix Cos. v. Dobson,*
    513 U.S. 265 (1995)...........................................................................................4, 17

*Am. Trucking Associations, Inc. v. City of Los Angeles,*
    559 F.3d 1046 (9th Cir. 2009) ...........................................................................3, 16

*Armendariz v. Found. Health Psychcare Servs., Inc.,*
    24 Cal. 4th 83 (2000) ............................................................................................15

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333 (2011)........................................................................................ *passim*

*Bank One v. Guttau,*
    190 F.3d 844 (8th Cir. 1999) ...............................................................................18

*Cal. Pharmacists Ass'n v. Maxwell-Jolly,*
    563 F.3d 847 (9th Cir. 2009) ...............................................................................16

*Chamber of Commerce of U.S. v. Edmondson,*
    594 F.3d 742 (10th Cir. 2010) .............................................................................18

*Circuit City Stores, Inc. v. Adams,*
    532 U.S. 105 (2001)...........................................................................................4, 17

*Coffman v. Queen of Valley Med. Ctr.,*
    895 F.3d 717 (9th Cir. 2018) ...............................................................................18

*Doctor's Assocs., Inc. v. Casarotto,*
    517 U.S. 681 (1996)..............................................................................................10

*Epic Sys. Corp. v. Lewis,*
    138 S. Ct. 1612 (2018)..........................................................................................11

*Feinerman v. Bernardi,*
    558 F. Supp. 2d 36 (D.D.C. 2008) .......................................................................16

*Ga. Latino Alliance for Human Rights v. Governor of Ga,*
    691 F.3d 1250 (11th Cir. 2012) ...........................................................................13

*Hines v. Davidowitz,*
    312 U.S. 52 (1941) ................................................................................................10

*Kindred Nursing Ctrs. Ltd. P'Ship v. Clark,*
    137 S. Ct. 1421 (2017) ................................................................................ *passim*

*Lamps Plus, Inc. v. Varela,*
    139 S. Ct. 1407 (2019) ....................................................................................10, 17

*Marmet Health Care Ctr., Inc. v. Brown,*
    565 U.S. 530 (2012) (per curiam) ........................................................................10

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) ...............................................................................18

*Morales v. Trans World Airlines, Inc.,*
    504 U.S. 374 (1992) ..............................................................................................16

*Nken v. Holder,*
    556 U.S. 418 (2009) ..............................................................................................17

*Odebrech Const., Inc. v. Sec'y, Fla. Dep't of Transp.,*
    715 F.3d 1268 (11th Cir. 2013) ............................................................................16

*OTO, LLC v. Kho,*
    8 Cal. 5th 111, 127 (2019) ....................................................................................15

*Perry v. Thomas,*
    482 U.S. 483 (1987) ......................................................................................5, 10, 11

*Preston v. Ferrer,*
    552 U.S. 346 (2008) ....................................................................................2, 5, 9, 11

*Sammartano v. First Jud. Dist. Ct.,*
    303 F.3d 959 (9th Cir. 2002) ...............................................................................18

*Southland Corp. v. Keating,*
    465 U.S. 1 (1984) ...............................................................................................9, 10

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
    559 U.S. 662 (2010) ..............................................................................................17

*Utah Licensed Beverage Ass'n v. Leavitt,*
    256 F.3d 1061 (10th Cir. 2001) ............................................................................18

*Valle del Sol Inc. v. Whiting,*
    732 F.3d 1006 (9th Cir. 2013) .............................................................................14

*Winter v. Natural Resources Defense Council,*
    555 U.S. 7 (2008) ...........................................................................................2, 3, 9

*Ex Parte Young*,
  209 U.S. 123 (1908) ............................................................................................. 16

**Statutes**

Assembly Bill 51 .......................................................................................... *passim*

Assembly Bill 3080 (Employment Discrimination: enforcement) (September 30,
  2018) ................................................................................................................. 5

Cal. Bus. & Prof. Code § 17200 *et seq.* ................................................................ 7

Cal. Gov't Code § 820.6 ...................................................................................... 16

Cal. Gov't Code § 1900 *et seq.* ............................................................................ 7

Cal. Gov't Code § 12550 ....................................................................................... 9

Cal. Gov't Code § 12945.6 .................................................................................... 8

Cal. Gov't Code § 12953 ....................................................................................... 8

Cal. Gov't Code § 26500 ....................................................................................... 9

Cal. Lab. Code § 1 et seq. ...................................................................................... 7

Cal. Lab. Code § 23 ............................................................................................... 8

Cal. Lab. Code § 210 ............................................................................................. 7

Cal. Lab. Code § 432.6(a) ................................................................................. 7, 14

Cal. Lab. Code § 432.6(b) ................................................................................... 15

Cal. Lab. Code § 432.6(c) ..................................................................................... 7

Cal. Lab. Code § 432.6(d) ..................................................................................... 8

Cal. Lab. Code § 432.6(h) ..................................................................................... 7

Cal. Lab. Code § 432.6(f) ................................................................................ 12, 13

Cal. Lab. Code § 433 ....................................................................................... 7, 13

Federal Arbitration Act
  9 U.S.C. §§ 1-16 ................................................................................................ 1
  9 U.S.C. § 2 ................................................................................................. 9, 10

# Other Authorities

Cal. Dep't of Fair Employment and Housing, *Employment Filed Cases: Count of Alleged Acts* (December 22, 2011) ...................................................................14

California AB 51 (Employment Discrimination: enforcement), Reg. Sess. 2019-2020, Senate Rules Committee Analysis (as amended March 26, 2019) (Third Reading—Prepared on September 1, 2019)....................................................6, 11, 12

California AB 51 (Employment Discrimination: enforcement), Reg. Sess. 2019-2020, Assembly Floor Analysis (As Amended March 26, 2019) (Third Reading – Prepared on May 21, 2019) ..................................................................6, 12

Governor's Veto Message, AB 3080 (Sept. 30, 2018) ...........................................5, 6

H.R. Rep. No. 97-542 (1982)..........................................................................................4

Glenn Jeffers, *AB51 will withstand challenges, author insists*, L.A. Daily J. (Nov. 27, 2019) .........................................................................................................6

Jason Scott Johnston & Todd Zywicki, *The Consumer Financial Protection Bureau's Arbitration Study: A Summary and Critique* 25-26, Mercatus Working Paper, Mercatus Center at George Mason University, Arlington, VA (Aug. 2015) .......................................................................................................4, 17

Lewis L. Maltby, *Private Justice: Employment Arbitration and Civil Rights*, 30 Colum. Hum. Rts. L. Rev. 29 (1998) ...................................................................17

Nat'l Workrights Inst., *Employment Arbitration: What Does the Data Show?* (2004) ...................................................................................................................18

NDP Analytics, *Fairer, Faster, Better: An Empirical Assessment of Employment Arbitration* (May 2019)....................................................................................4, 17

Press Release Number: 2019-83, State of California Department of Industrial Relations, *California Labor Commissioner's Office Cites Inventory Company, Grocers More than $1.6 Million for Wage Theft Violations* ....................................14

David Sherwyn, Samuel Estreicher, and Michael Heise, *Assessing the Case for Employment Arbitration: A New Path for Empirical Research*, 57 Stanford L. Rev. 1557 (2005) ..............................................................................................17

Theodore J. St. Antoine, *Labor and Employment Arbitration Today: Mid-Life Crisis or New Golden Age?*, 32 Ohio St. J. on Disp. Resol. 1 (2017) ......................4

U.S. Const. art. VI, cl. 2..................................................................................................9

**INTRODUCTION**

Congress enacted the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") to "promote arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011). Acknowledging that purpose, the Supreme Court has repeatedly held that the FAA preempts state substantive or procedural rules that forbid or undermine agreements to arbitrate in the labor and employment context or in any other setting within the federal statute's scope.

The State of California nonetheless recently enacted a law—Assembly Bill 51, or AB 51— that purports to prohibit businesses and workers from agreeing to arbitrate an exceptionally broad range of labor and employment discrimination claims until after those claims arise. AB 51 even makes it a crime for businesses to exercise their federally protected rights to present workers with agreements to arbitrate those claims.

Unless this Court enjoins the enforcement of AB 51 now, this law—unconstitutional under the Supremacy Clause—will take effect on January 1, 2020. At that time, AB 51 will forbid businesses from asking their workers to agree, as a condition of employment or any employment-related benefits, to waive any "right, forum, or procedure" provided by the California Fair Housing and Employment Act ("FEHA") or by the entire California Labor Code. Because FEHA and the Labor Code provide for the right to file complaints in court—the waiver of which is an inherent characteristic of arbitration—this language purports to prohibit businesses from entering into arbitration agreements with workers. And AB 51 treats an arbitration agreement as mandatory— and thus unlawful—even if a worker has the opportunity to opt out of it.

Numerous members of Plaintiffs the Chamber of Commerce of the United States of America (the "U.S. Chamber"), the California Chamber of Commerce (the "CalChamber"), the National Retail Federation ("NRF"), the California Retailers Association ("CRA"), the National Association of Security Companies ("NASCO"), the Home Care Association of America ("HCAOA"), and the California Association For Health Services At Home ("CAHSAH") (collectively, "Plaintiffs") are businesses that operate in California and currently rely on arbitration to resolve workplace-related disputes. These members and other California businesses have long

used arbitration to provide fair, quick, and efficient resolution of workplace disputes while reducing the burdens to all parties of litigation in court. Some members condition employment or the provision of work on an agreement to arbitrate, while others permit workers to opt out of arbitration.

All of these companies face harsh sanctions, including criminal penalties, if they continue these practices on or after January 1, 2020. And if they instead choose to comply with AB 51 while the Court decides this case, Plaintiffs' members will incur substantial, unrecoverable costs. Plaintiffs thus respectfully request entry of a preliminary injunction barring Defendants—the Attorney General of California, the Director of the Department of Fair Employment and Housing, the Secretary of the California Labor and Workforce Development Agency, and the California Labor Commissioner—from enforcing AB 51 while Plaintiffs challenge its legality.

Plaintiffs meet the four-part test set forth in *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008).

*First*, Plaintiffs are highly likely to succeed on the merits of their challenge. AB 51 is preempted by the FAA and therefore invalid under the Supremacy Clause of the United States Constitution. The "defining trait" of arbitration agreements is "a waiver of the right to go to court." *Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*, 137 S. Ct. 1421, 1427 (2017). AB 51 forbids agreements to waive either a judicial or an administrative forum, and subjects any business that routinely includes such agreements as an element of an employment contract to both civil liability and criminal penalties. By doing so, AB 51 improperly "impede[s] the ability of" employers "to enter into arbitration agreements," and therefore is preempted. *Id.* at 1429; *see Preston v. Ferrer*, 552 U.S. 346, 350, 358 (2008) (rejecting any "distinction between judicial and administrative proceedings" for purposes of FAA preemption).

Some legislative materials accompanying AB 51 suggest that the new law would not be preempted because it regulates the formation of arbitration agreements rather than the enforceability of those agreements once formed. But the Supreme Court's decision in *Kindred* squarely forecloses that theory. As Justice Kagan explained for the Court, the FAA protects

PLAINTIFFS' MEMO. ISO MOTION FOR A PRELIMINARY INJUNCTION
Case No. 2:19-cv-02456-KJM-DB

against not only discriminatory rules regarding the enforcement of arbitration agreements, but also rules "governing what it takes to enter into them." *Kindred*, 137 S. Ct. at 1428. In short, AB 51 violates the FAA's mandate to put arbitration agreements on an "equal footing" with other contracts. *Concepcion*, 563 U.S. at 339.

*Second*, in the absence of preliminary relief, AB 51 will inflict irreparable harm on Plaintiffs' members. *See Winter*, 555 U.S. at 20. Plaintiffs' members could not recover the significant administrative expenses or the increase in dispute-resolution costs that will result if they are forced to comply with AB 51 while this action is pending. Businesses and workers who are forced into resolving their disputes through litigation in court—often after administrative adjudication—until this action is resolved would lose the benefits of arbitration. And those members who do not comply with AB 51, based on the good-faith belief that the FAA protects arbitration agreements, risk unprecedented sanctions, including criminal liability.

*Third*, the balance of the equities and the public interest, factors that merge when the government is a party, both weigh heavily in favor of a preliminary injunction. *See Winter*, 555 U.S. at 20, 25-26. Plaintiffs will suffer serious, irreparable harm without an injunction. In contrast, Defendants would experience no harm at all if an injunction were issued. The injunction would simply preserve the status quo permitting businesses and their workers to enter into arbitration agreements. And Defendants have no legitimate interest in enforcing an invalid law that flies in the face of the FAA's federal policy favoring arbitration and "the Constitution's declaration that federal law is to be supreme." *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009).

In sum, a preliminary injunction against enforcement of AB 51 is both appropriate and necessary, and should be entered without delay.

## BACKGROUND

### A. Plaintiffs' members rely on agreements with their workers so that all parties have access to the benefits of arbitration.

Arbitration is a faster, simpler, cheaper, and less adversarial mode of dispute resolution as compared to litigation in court. The Supreme Court has recognized "real benefits to the

enforcement of arbitration agreements" in the employment context. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). For example, the Court has observed, arbitration lowers the cost of dispute resolution because it is more efficient and uses simpler procedures. *See Concepcion*, 563 U.S. at 345 ("[T]he informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution."). These "simpler procedural and evidentiary rules" reduce the burdens on both parties; arbitration "normally minimizes hostility and is less disruptive of ongoing and future business dealings among the parties; [and] it is often more flexible in regard to scheduling of times and places of hearings and discovery devices." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995) (quoting H.R. Rep. No. 97-542, at 13 (1982)).

"[A]llowing parties to avoid the costs of litigation" is "a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts." *Circuit City*, 532 U.S. at 122-23. Because of these features, arbitration is accessible to workers who do not have access to legal counsel. *See* Jason Scott Johnston & Todd Zywicki, *The Consumer Financial Protection Bureau's Arbitration Study: A Summary and Critique* 25-26, Mercatus Working Paper, Mercatus Center at George Mason University, Arlington, VA (Aug. 2015) ("hiring an attorney * * * is often unnecessary [in arbitration]"). And these features make it practicable for workers to assert claims in arbitration that they could not practically assert in court.

Empirical research confirms these conclusions. A recent study released by the U.S. Chamber's Institute for Legal Reform demonstrated that, in cases decided on the merits, employees on average recovered *more money* in arbitration—and did so in less time than in court litigation. *See* NDP Analytics, *Fairer, Faster, Better: An Empirical Assessment of Employment Arbitration* 5-10 (May 2019), *available at* https://www.instituteforlegalreform.com/uploads/sites/1/ Empirical-Assessment-Employment-Arbitration.pdf; *see also* Theodore J. St. Antoine, *Labor and Employment Arbitration Today: Mid-Life Crisis or New Golden Age?*, 32 Ohio St. J. on Disp. Resol. 1, 16 (2017) (arbitration is "favorable to employees as compared with court litigation").

Businesses, including Plaintiffs' members with operations in California, use arbitration to resolve workplace-related disputes so that the business and its employees can obtain the benefits of arbitration. *See* Declaration of Brian Maas ¶ 6; Compl. ¶¶ 16-22. Almost all these businesses either enter into predispute arbitration agreements with their workers as a condition of employment or allow workers to opt out of arbitration by taking some affirmative step (such as providing the company with written notice). *See* Maas Dec. ¶ 21. These practices ensure that businesses and workers can make use of alternative dispute resolution procedures to avoid the expense and complexity of traditional litigation in court. *Id.* ¶ 27; Compl. ¶¶ 2-7.[1]

**B. The California Legislature seeks to restrict employment arbitration practices.**

Despite the benefits of employment arbitration, the California Legislature has repeatedly tried to ban it.

More than thirty years ago, the Supreme Court held that the FAA preempted a California Labor Code provision requiring that wage collection actions be resolve in court "without regard to the existence of any private agreement to arbitrate." *Perry v. Thomas*, 482 U.S. 483, 484 (1987). The Court concluded that prohibiting arbitration of wage disputes was in "unmistakable conflict" with the FAA, so that, "under the Supremacy Clause, the state statute must give way." *Id.* at 491.

The Legislature later purported to vest exclusive original jurisdiction in the Labor Commissioner over disputes between artists and talent agents even when the parties had agreed to arbitrate. *See Preston*, 552 U.S. at 350-51. But the Supreme Court held that, "when parties agree to arbitrate all questions arising under a contract, state laws lodging primary jurisdiction in another forum, whether judicial or administrative, are superseded by the FAA." *Id.* at 349-50.

More recently, the Legislature passed Assembly Bill 3080 ("AB 3080") in September 2018, a bill that sought to prohibit arbitration as a condition of employment and contained provisions almost identical to those in AB 51. *See* California AB 3080 (Employment Discrimination: enforcement) (September 30, 2018). Former California Governor Jerry Brown vetoed AB 3080, explaining that the statute "plainly violates federal law." Governor's Veto

---

[1] The harms identified by Mr. Maas are representative of the harms that many of the plaintiffs' members will suffer as a result of AB 51.

Message, AB 3080 (Sept. 30, 2018), available at http://leginfo.legislature.ca.gov/faces/ billStatusClient.xhtml?bill_id=201720180AB3080. Governor Brown's veto message explained that AB 3080 was "based on a theory that the Act only governs the enforcement and not the initial formation of arbitration agreements and therefore California is free to prevent . . . arbitration agreements from being formed at the outset." *Id.* But Governor Brown recognized that "[t]he Supreme Court has made it explicit this approach is impermissible." *Id.* (citing *Kindred*, 137 S. Ct. at 1428); Compl. ¶ 30.

Disregarding the former Governor's concerns, the California Legislature passed AB 51 a year later, in September 2019. The new bill was crafted in part by the plaintiffs' bar. *See* Glenn Jeffers, *AB51 will withstand challenges, author insists*, L.A. Daily J. (Nov. 27, 2019) (quoting and identifying plaintiffs' lawyer Cliff Palefsky as "one of the law's authors"). The Senate and Assembly Floor analyses for AB 51 explained that AB 51 was designed to prohibit arbitration agreements as a condition of employment. For example:

- The author of AB 51 stated that the bill is needed to address what she pejoratively calls "forced arbitration." *See* California AB 51 (Employment Discrimination: enforcement), Reg. Sess. 2019-2020, Senate Rules Committee Analysis 3-4 (as amended March 26, 2019) (Third Reading—Prepared on September 1, 2019), available at https://leginfo.legislature.ca.gov/faces/billAnalysisClient. xhtml?bill_id=201920200AB51.

- The Senate analysis states that the law is designed to combat "the specter of mandatory labor law arbitration." *Id.* at 5.

- The Assembly analysis likewise acknowledges that the law targets "[t]he use of mandatory arbitration agreements in the employment context." California AB 51 (Employment Discrimination: enforcement), Reg. Sess. 2019-2020, Assembly Floor Analysis 1 (As Amended March 26, 2019) (Third Reading – Prepared on May 21, 2019), available at https://leginfo.legislature.ca.gov/faces/billAnalysisClient. xhtml?bill_id=201920200AB51.

**C.  The Governor signs AB 51 into law.**

Governor Newsom signed AB 51 into law on October 10, 2019.  Compl. ¶ 40.  AB 51 "applies to contracts for employment entered into, modified, or extended on or after January 1, 2020."  Cal. Lab. Code § 432.6(h).  AB 51 will amend both California's Labor Code (Cal. Lab. Code § 1 *et seq.*) and FEHA (Cal. Gov't Code § 1900 *et seq.*).

**(1) AB 51's amendment to the Labor Code.**

California's voluminous Labor Code creates a panoply of wage, hour, and other employment-related claims.  *See, e.g.*, Cal. Lab. Code § 210 (civil penalties against employers for failure to pay employee wages); *id.* § 246.5(c) (employee right to sick leave); *id.* § 98.6 (employee whistleblower protections).  The California Labor Commissioner, under the oversight of the Secretary of the Labor and Workforce Development Agency, generally enforces the provisions of the Labor Code through the Division of Labor Standards Enforcement. The Labor Code allows individuals aggrieved by alleged violations to file complaints with the Division.  *Id.* §§ 95; 98. Parties may appeal the Labor Commissioner's orders to superior courts. *Id.* § 98.2.  Aggrieved individuals also may directly sue employers over many Labor Code violations.  *See, e.g.*, *id.* §§ 98.7, 203, 1194, 2698-2699.6; Cal. Bus. & Prof. Code § 17200 *et seq.*

AB 51 will add Section 432.6 to the Labor Code.  That section will prohibit employers from requiring any employee or applicant to "waive any right, forum or procedure for a violation of any provision" of FEHA or the entire Labor Code, including "the right to file and pursue a civil action" in "any court," "as a condition of employment, continued employment, or the receipt of any employment-related benefit."  Cal. Lab. Code § 432.6(a).

Section 432.6 deems agreements that allow employees to "opt out of a waiver or take any affirmative action in order to preserve their rights" to impose a condition of employment.  *See* Cal. Lab. Code § 432.6(c).  That is, voluntary opt-out procedures are treated as if they provided no option at all.

Under the Labor Code, businesses that violate these restrictions are guilty of a misdemeanor (Cal. Lab. Code § 433), which is punishable by imprisonment not exceeding six

months or a fine not exceeding $1,000, or both (Cal. Lab. Code § 23).  Individuals who prevail in an action enforcing their rights under Section 432.6(d) will be entitled to injunctive relief and attorneys' fees.  Cal. Lab. Code § 432.6(d).

**(2) AB 51's amendment to FEHA.**

FEHA includes a variety of protections against workplace discrimination.  *See*, *e.g.*, Cal. Gov't Code § 12945.6 (employee rights related to parental leave); *id.* § 12945 (rights related to pregnancy, childbirth, and medical conditions); *id.* § 12948 (denial of civil rights as an unlawful practice).  The Department of Fair Employment and Housing is responsible for enforcing FEHA, which directs persons "aggrieved by an alleged unlawful practice" to file complaints with the Department's Director.  *Id.* §§ 12960-12965.  If, after investigation, the Director determines that a complaint is valid, he must "immediately endeavor to eliminate the unlawful employment practice complained of by conference, conciliation, and persuasion." *Id.* § 12963.7.  If these measures fail, the Director may bring a civil action on behalf of the person aggrieved.  *Id.* § 12965.  If the Department does not bring a civil action within 150 days after the filing of a complaint—or during that time decides not to bring an action—the Department will issue a right-to-sue notice to the complainant, who can then bring a civil action against the employer.  *Id.*

AB 51 amends FEHA by adding Section 12953, which provides that any violation of Section 432.6 in the Labor Code will be an "unlawful employment practice" under FEHA, Cal. Gov't Code § 12953, providing an additional and distinct administrative remedy (and a distinct private right of action) for any violation of Labor Code section 432.6.

**D.  Businesses face a genuine threat of civil and criminal enforcement of AB 51.**

Businesses that do not comply with AB 51 risk several types of enforcement actions. As explained above:

- The Labor Commissioner may enforce Labor Code section 432.6 directly.
- The Director of the Department of Fair Employment and Housing may enforce violations of that provision as violations of FEHA under Government Code section 12953.

- Workers may bring their own actions under both statutes.

- And because violations of Section 432.6, may be treated as misdemeanors, businesses are subject to prosecution by California's Attorney General and the District Attorneys under his direct supervision, who are charged with enforcing California's criminal laws. Cal. Gov't Code §§ 12550, 26500; Compl. ¶ 49.

The threat to California business is significant, real, and imminent.

## ARGUMENT

The standard for issuing a preliminary injunction is well established. A party is entitled to a preliminary injunction if it shows that (1) it is "likely to succeed on the merits"; (2) it is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) the balance of equities tips in [its] favor"; and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20. Under the Ninth Circuit's sliding scale approach to balancing these factors, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the preliminary injunction is in the public interest." *All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

Plaintiffs meet all four factors.

### A. Plaintiffs Are Likely To Succeed On The Merits.

Plaintiffs are likely to succeed on the merits of their claims because AB 51 is preempted by the FAA.

The Supremacy Clause directs that the "laws of the United States * * * shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2. As a consequence, any state law that "conflicts with § 2 of the Federal Arbitration Act * * * violates the Supremacy Clause." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) (provision of California Corporations Code preempted); *see Preston*, 552 U.S at 353 ("The FAA's displacement of conflicting state law is 'now well-established.'"). Likewise, a state law that "stands as an obstacle to the

PLAINTIFFS' MEMO. ISO MOTION FOR A PRELIMINARY INJUNCTION
Case No. 2:19-cv-02456-KJM-DB

accomplishment and execution of the full purposes and objectives of Congress," as expressed in federal law, is preempted and invalid. *Concepcion*, 563 U.S. at 352 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). AB 51 is preempted on both grounds.

The FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (per curiam) (quotation marks omitted). Section 2 of the FAA specifies that a "written provision in * * * a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under Section 2, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Concepcion*, 563 U.S. at 339; *accord Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019). Accordingly, the Supreme Court has repeatedly held that state laws disfavoring arbitration are preempted.[2]

AB 51's special restrictions on the ability of businesses to enter into arbitration agreements with their workers, especially coupled with the extraordinary sanction of criminal penalties—restrictions and penalties that do not apply to other types of contracts—violate Section 2 of the FAA. Under AB 51, any contract term may be a condition of employment except a term that substitutes another dispute resolution process for litigation in court or before an administrative tribunal—a standard explicitly designed to prohibit arbitration as a condition of employment. A rule that "singl[es] out arbitration provisions for suspect status" in this manner "directly conflicts with § 2 of the FAA." *Casarotto*, 517 U.S. at 688; *see also Kindred*, 137 S. Ct. at 1426-27 (FAA preempts a state-law rule that "fails to put arbitration agreements on an equal plane with other contracts" and "singl[es] out those contracts for disfavored treatment"). Indeed, as noted above

---

[2]      *See, e.g.*, *Kindred*, 137 S. Ct. at 1426 (Kentucky state-law rule requiring specific express authorization in power-of-attorney before an attorney-in-fact could agree to arbitration on behalf of her principal); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687-88 (1996) (Montana statute conditioning enforcement of arbitration agreements on special notice requirements); *Perry*, 482 U.S. at 491 (California Labor Code provision requiring judicial forum for wage collection actions); *Southland*, 465 U.S. at 10 (requirement that claims under California Franchise Investment Law be decided in court).

(at 5), the Supreme Court has specifically recognized that California Labor Code provisions that disfavor arbitration are preempted. *See Preston*, 552 U.S. 346; *Perry*, 482 U.S. 483.

None of the arguments that were raised against preemption in the California Legislature, anticipating a challenge like this one, withstand scrutiny.

*First*, Supreme Court precedent forecloses the contention that AB 51 avoids preemption because "its edicts would apply equally to waiver of any dispute resolution forum or procedure." Senate Rules Committee Analysis, *supra*, at 6. As the Court recently reiterated, Section 2's "savings clause does not save defenses that target arbitration either by name *or by more subtle methods*." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (emphasis added). The FAA preempts both any State rule that "discriminates on its face against arbitration" and any rule "that covertly accomplishes the same objective by disfavoring contracts that * * * have the defining features of arbitration agreements." *Kindred*, 137 S. Ct. at 1426. Just like the preempted rule in *Kindred*, AB 51 selects a defining feature of arbitration agreements—"a waiver of the right to go to court"—and on the basis of that feature "impede[s] the ability" of employers to enter arbitration agreements. *Id.* at 1427, 1429; *see Preston*, 552 U.S. at 354-59 (under same principles, holding FAA preempts law requiring initial resort to administrative adjudication).

Restrictions such as those imposed by AB 51 that derive their meaning from the fact that an agreement to arbitrate is at issue "flout the FAA's command to place those agreements on equal footing with other contracts" and are therefore preempted. *Kindred*, 137 S. Ct. at 1428. As the Supreme Court recognized in *Concepcion*, state-law rules requiring "disposition by a jury," "judicially monitored discovery," or application of "the Federal Rules of Evidence" are all "obvious illustration[s]" of rules that would be preempted by the FAA—even if they purport to apply "to 'any' contract." 563 U.S. at 341-42. That is because such rules would "[i]n practice . . . have a disproportionate impact on arbitration agreements" and "interfere[] with fundamental attributes of arbitration." *Id.* at 342, 344.

Simply put, states may not subject arbitration agreements, "by virtue of their defining trait, to uncommon barriers." *Kindred*, 137 S. Ct. at 1427.

PLAINTIFFS' MEMO. ISO MOTION FOR A PRELIMINARY INJUNCTION
Case No. 2:19-cv-02456-KJM-DB

*Second*, the Supreme Court's decision in *Kindred* also squarely repudiates the assertion by AB 51's author that "[t]he Supreme Court has never ruled that the FAA applies in the absence of a valid agreement." Senate Rules Committee Analysis, *supra*, at 4. The plaintiffs in *Kindred* argued that "the FAA has no application to contract formation issues." 137 S. Ct. at 1428 (quotation marks omitted). But the Supreme Court disagreed, making clear that the FAA's "equal-footing principle" applies not only to the enforcement of arbitration agreements once formed, but also to "what it takes to enter into them." *Id.* That clear holding prompted Governor Brown to veto an earlier bill on the ground that it "plainly violate[d] federal law" because it purported to avoid FAA preemption under the same rationale. *See* pages 5-6, *supra*.

*Third*, and for similar reasons, the result is not altered by the language, belatedly added to AB 51, stating that the statute is not "intended to invalidate a written arbitration agreement that is otherwise enforceable under the Federal Arbitration Act." Cal. Labor Code § 432.6(f). Regardless of whether an arbitration agreement governed by the FAA is valid once formed, AB 51 penalizes employers—with potential criminal liability—for forming an arbitration agreement in the first place. Accordingly, the effort to circumvent federal preemption in Section 432.6(f) merely repackages the rationale foreclosed by *Kindred*—that a State-law rule "falls outside the purview of the FAA" so long as it "regulates employer behavior prior to an agreement being reached." Senate Floor Analysis, *supra*, at 4-5. In practical consequence, the Legislature's position "would make it trivially easy for States to undermine the Act—indeed, to wholly defeat it." *Kindred*, 137 S. Ct. at 1428. After all, the obvious and intended result of the special barriers AB 51 imposes on the formation of arbitration agreements, backed by criminal sanctions, is to undermine the FAA's purpose "to promote arbitration" because it plainly will deter businesses from entering into arbitration agreements. *Concepcion*, 563 U.S. at 345.

In the alternative, the text of Cal. Labor Code § 432.6(f) should be interpreted on its own terms to preclude application of the statute to any arbitration agreement governed by the FAA. Section 432.6(f) purports not to "invalidate" arbitration agreements governed by the FAA. But again, as the U.S. Supreme Court explained in *Kindred*, the "validity" of arbitration agreements

includes "their initial validity—that is, * * * what it takes to enter into them."  137 S. Ct. at 1428 (quotation marks and alterations omitted).  Accordingly, Section 432.6(f) precludes enforcing the other provisions of AB 51 against any employer that enters into arbitration agreements governed by the FAA.  Declaring it unlawful to enter into such agreements—and subjecting the employer to liability and potential criminal and civil penalties—"invalidates" those agreements by foreclosing a previously permissible means of "what it takes to enter into them."  That is precisely what the FAA prohibits.

In short, Plaintiffs are likely to prevail on their claim that AB 51 violates federal law.

**B. Plaintiffs Will Suffer Imminent Irreparable Harm In The Absence Of A Preliminary Injunction.**

If AB 51 were allowed to go into effect as scheduled on January 1, 2020, Plaintiffs and their members would suffer irreparable harm.

Many of Plaintiffs' members currently enter into arbitration agreements with workers.  They do so as a requirement for entering into a working relationship.  These standard practices allow businesses and workers to obtain the benefits of an arbitral forum to resolve workplace-related disputes expeditiously and fairly.  And businesses operating in California (and elsewhere in the United States) expect that they will be able to enter into enforceable arbitration agreements—because of the FAA's protection of the enforceability of those agreements—and therefore anticipate lower legal costs and more efficient dispute resolution procedures.  *See* Maas Decl. ¶¶ 6-7, 21-22.

In the absence of a preliminary injunction, Plaintiffs' members will suffer significant harms that cannot be corrected once inflicted, no matter how they respond to AB 51.

On the one hand, if Plaintiffs' members refuse to comply with AB 51 while this litigation is pending because they believe that the law is invalid, they risk criminal and civil penalties and lawsuits.  For starters, Labor Code section 433 exposes businesses to a real risk of criminal prosecution.  "[T]he threat of state prosecution for crimes that conflict with federal law" amounts to irreparable harm.  *Ga. Latino Alliance for Human Rights v. Governor of Ga*, 691 F.3d 1250, 1269 (11th Cir. 2012).  The Ninth Circuit affirmed the entry of a preliminary injunction in a case

challenging as preempted a state statute, like this one, that included criminal penalties, explaining that the "threat of prosecution under the [challenged] statute" establishes irreparable harm. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013); *see also* Maas Dec. ¶¶ 23-25.

Moreover, civil investigations and enforcement actions under AB 51 are especially likely. Both the Labor Code and FEHA allow employees to file a complaints with the enforcement agencies. The Department of Fair Employment and Housing vigorously enforces FEHA, recording 43,208 filed cases related to employment actions in 2010 alone. Cal. Dep't of Fair Employment and Housing, Employment Filed Cases: Count of Alleged Acts (December 22, 2011), https://www.dfeh.ca.gov/wp-content/uploads/sites/32/2017/06/CY_01-12_Cases_Filed_by_Act-Emp.pdf. And the California Labor Commissioner robustly enforces the Labor Code, regularly taking enforcement actions against employers. *See, e.g.*, Press Release Number: 2019-83, State of California Department of Industrial Relations, *California Labor Commissioner's Office Cites Inventory Company, Grocers More than $1.6 Million for Wage Theft Violations*.

On the other hand, if California businesses are coerced into compliance by the threat of criminal and civil penalties, they will suffer other irreparable injuries. *First*, these businesses will have to forgo their federally protected rights to enter into predispute arbitration agreements with their workers, throughout the pendency of the litigation. That will require them to incur immediate administrative costs to redraft their contracts to omit arbitration provisions.

Indeed, the only practical approach for employers to ensure compliance with AB 51 is to cease entering into predispute arbitration agreements with their employees. *See* Maas Dec. ¶¶ 26-30. The California Legislature declared that AB 51 purports not to affect "voluntary" arbitration agreements (AB 51 § 1(b)), but the statute does not define that term or what it means for an arbitration agreement to be a "condition of employment, continued employment, or receipt of any employment-related benefit" and therefore prohibited (Cal. Labor Code § 432.6(a)). Accordingly, the risk that a court or other decisionmaker will conclude that a contract formation process is not sufficiently "voluntary"—subjecting the employer to potential criminal and civil penalties—will lead employers simply to stop offering arbitration agreements to their employees. *See* Maas Dec.

¶¶ 17, 29.

This concern is hardly hypothetical. Anyone who executes an arbitration agreement could argue that the process was not sufficiently "voluntary." And anyone who does not execute an arbitration agreement could later claim that any adverse employment action against them was "retaliat[ion]" for "the refusal to consent" to arbitration, Cal. Labor Code § 432.6(b), subjecting employers to litigation and significant potential liability. Indeed, California courts have long viewed the voluntariness of employment arbitration agreements with suspicion, treating any "nonnegotiable contract of adhesion in the employment context [a]s procedurally unconscionable." *Ajamian v. CantorCO2e, LP*, 203 Cal. App. 4th 771, 796 (2012) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 115 (2000)). The California Supreme Court recently reaffirmed its view that the presentation of an arbitration agreement to an employee or applicant is inherently oppressive, so that, "[i]n both the prehiring and posthiring settings, courts must be 'particularly attuned' to the danger of oppression or overreaching." *OTO, LLC v. Kho*, 8 Cal. 5th 111, 127 (2019) (quoting *Armendariz*, 24 Cal. 4th at 115).

*Second*, these changes will result in fewer arbitration agreements being formed, and more disputes being channeled into judicial and administrative, rather than arbitral, forums. Plaintiffs' members would be deprived of the benefits and cost savings of arbitration whenever disputes arise and must be resolved in the slower and more expensive court system, sometimes with a protracted administrative proceeding as a prelude. And Plaintiffs' members are likely to experience a spike in the filing of meritless lawsuits, as some members of the plaintiffs' bar may try to leverage the sudden increase in employers' defense costs to obtain windfall settlements for baseless claims that would never have been filed in arbitration. Maas Dec. ¶ 32.

*Third*, were AB 51 to be invalidated later, Plaintiffs' members could not undo the consequences of changes they had made in an effort to comply with AB 51. *See* Maas Dec. ¶ 34. Disputes that arise during the pendency of this action involving workers who have not agreed to arbitration would already have been diverted into the judicial system. *See* Maas Dec. ¶ 35. And some workers will no longer be working for the same business at the conclusion of the litigation,

making it too late to change the parties' legal relationship.  *See* Maas Dec. ¶ 36.

None of these costs can be recovered with monetary damages at the conclusion of the suit, because they would be barred by sovereign immunity.  *See, e.g.*, *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009), *vacated on other grounds by Douglas v. Indep. Living Ctr. of S. Cal, Inc.*, 565 U.S. 606 (2012).  "[N]umerous courts have held that the inability to recover monetary damages because of sovereign immunity renders the harm suffered irreparable."  *Odebrech Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013)); *see also Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008) ("where, as here, the plaintiff in question cannot recover damages from the defendant due to the defendant's sovereign immunity * * * any loss of income suffered by a plaintiff is irreparable *per se*.").  The Defendants would be equally immune from damages in the California state courts:  "a public employee [who] acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, * * * is not liable for an injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable."  Cal. Gov't Code § 820.6; *see also id.* § 815(a) (general sovereign immunity for "public entity").)

In short, because Plaintiffs' members must choose between risking enforcement actions or complying with an invalid law that requires them to alter their relationships with their workers and incur significant costs, "a very real penalty attaches" regardless of how the members proceed.  *Am. Trucking Associations*, 559 F.3d at 1058.  Plaintiffs' members face a "Hobson's choice"; they may either continually violate the unlawful legislation and expose themselves to increasing liability—here including criminal penalties—or "violate the law once as a test case and suffer the injury of obeying the law during the pendency of the proceedings."  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992); *see also Ex Parte Young*, 209 U.S. 123, 145-46 (1908) ("officers and employees could not be expected to disobey" state law imposing criminal penalties in order to test its validity).

In either case, the irreparable harm is clear, and can be avoided only if enforcement of

AB 51 is preliminarily enjoined.

### C. The Balance Of Hardships And The Public Interest Weigh Sharply In Plaintiffs' Favor.

The inquiries into the balance of the hardships and the public interest merge where the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both factors strongly support issuing a preliminary injunction.

Allowing AB 51 to go into effect would deprive businesses and their workers alike of the many benefits of arbitration. The Supreme Court has repeatedly recognized that "enforcement of arbitration provisions" yields "real benefits," *Circuit City*, 532 U.S. at 122-23, including "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes," *Lamps Plus*, 139 S. Ct. at 1416 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010)); *accord Allied-Bruce*, 513 U.S. at 280 (one of arbitration's "advantages" is that it is "cheaper and faster than litigation") (quotation marks omitted).

Arbitration is also procedurally simpler, which reduces the burdens on both parties. Indeed, arbitration's simplified procedures often allow individuals to proceed without a lawyer. *See, e.g.*, Johnston & Zywicki, *supra*, at 25-26. This aspect of arbitration is particularly beneficial to employees with smaller claims, such as a dispute over a small amount of unpaid overtime. It may not be cost-effective to pay a lawyer on an hourly or flat-fee basis to pursue these claims in court, yet the small stakes would deter lawyers from agreeing to a contingency fee. And the complexities of judicial litigation make effective pursuit of these claims on a *pro se* basis impossible.

Again, a recent study demonstrated that, in cases decided on the merits, employees on average recovered *more*—and in less time—than they did in court litigation. *See* NDP Analytics, *supra*, at 5-10. Earlier scholarship similarly reports that employees succeed more often in arbitration than in court. *See* David Sherwyn, Samuel Estreicher, and Michael Heise, *Assessing the Case for Employment Arbitration: A New Path for Empirical Research*, 57 Stanford L. Rev. 1557, 1568-69 (2005) (observing that, once dispositive motions are taken into account, the actual employee-win rate in court is "only 12% to 15%") (citing Lewis L. Maltby, *Private Justice:*

PLAINTIFFS' MEMO. ISO MOTION FOR A PRELIMINARY INJUNCTION
Case No. 2:19-cv-02456-KJM-DB

*Employment Arbitration and Civil Rights*, 30 Colum. Hum. Rts. L. Rev. 29 (1998)) (of dispositive motions granted in court, 98% are granted for the employer); Nat'l Workrights Inst., *Employment Arbitration: What Does the Data Show?* (2004) (concluding that employees were 19% more likely to win in arbitration than in court), available at goo.gl/nAqVXe.

The public therefore has a powerful interest in preventing businesses and their workers from being deprived of the benefits of arbitration—all the more because those benefits are protected under federal law.

In stark contrast to the irreparable injury that Plaintiffs' members would suffer without a preliminary injunction, Defendants will suffer *no* harm if one is granted. AB 51 is preempted by the FAA, and the public interest is always served by enjoining the enforcement of invalid provisions of a state law. As the Ninth Circuit has held, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002)); *see also Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001) (public interest favors preliminarily enjoining state statutes likely to be held unconstitutional); *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010) (quoting *Bank One v. Guttau*, 190 F.3d 844, 848 (8th Cir. 1999). The bottom line is that California has no valid interest in evading federal law. *Edmondson*, 594 F.3d at 771.

In any event, enjoining AB 51 would not harm Defendants. If the statute were ultimately found lawful, it could go into full effect when this case was over. And there is no urgent reason why AB 51's restrictions on arbitration agreements must go into effect immediately. For years, California businesses have entered into arbitration agreements with workers in reliance on the Federal Arbitration Act and Supreme Court precedent. A preliminary injunction would merely result in "preservation of the status quo" until AB 51's validity has been definitively adjudicated. *Coffman v. Queen of Valley Med. Ctr.*, 895 F.3d 717, 728 (9th Cir. 2018). Moreover, if any particular arbitration agreement actually is unfair to workers, it can be invalidated under normal unconscionability principles. *See Kindred*, 137 S. Ct. at 1426. In sum, the case for a preliminary

injection here is compelling.

**CONCLUSION**

The Court should enter a preliminary injunction prohibiting Defendants from enforcing AB 51 pending the completion of judicial review.

Dated: December 9, 2019        Respectfully submitted,

By: _/s/ Donald M. Falk_
Donald M. Falk (SBN 150256)
Two Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2112
(650) 331-2000
(650) 331-4000 (fax)
dfalk@mayerbrown.com

Andrew J. Pincus*
Archis A. Parasharami (SBN 321661)
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
(202) 263-3300 (fax)
apincus@mayerbrown.com
aparasharami@mayerbrown.com

*Counsel for Plaintiffs Chamber of Commerce of the United States of America and California Chamber of Commerce*

Erika C. Frank (SBN 221218)
CALIFORNIA CHAMBER OF COMMERCE
1215 K Street, Suite 1400
Sacramento, CA 95814
(916) 444-6670
erika.frank@calchamber.com

*Counsel for Plaintiff California Chamber of Commerce*

Steven P. Lehotsky*
Jonathan Urick*
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337
(202) 463-5346 (fax)
slehotsky@uschamber.com

PLAINTIFFS' MEMO. ISO MOTION FOR A PRELIMINARY INJUNCTION
Case No. 2:19-cv-02456-KJM-DB

*Counsel for Plaintiff Chamber of Commerce of the United States of America*

Bruce J. Sarchet (SBN 121042)
Maurice Baskin*
LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 200
Sacramento, CA 95814
(916) 830-7200
(916) 561 0828
bsarchet@littler.com
mbaskin@littler.com

*Counsel for Plaintiffs National Retail Federation, California Retailers Association, National Association of Security Companies, Home Care Association of America, and California Association for Health Services at Home*

\* *Motion for Admission Pro Hac Vice To Be Filed*