XAVIER BECERRA, State Bar No. 118517
Attorney General of California
TAMAR PACHTER, State Bar No. 146083
Supervising Deputy Attorney General
CHAD A. STEGEMAN, State Bar No. 225745
Deputy Attorney General V
455 Golden Gate Ave., Ste. 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3624
Fax: (415) 703-5843
E-mail: Chad.Stegeman@doj.ca.gov
*Attorneys for Defendants Xavier Becerra, Lilia Garcia-Brower, Julie A. Su, and Kevin Kish, in their official capacities*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, et al.,**<br>Plaintiffs,<br>v.<br>**XAVIER BECERRA, et al.,**<br>Defendants. | 2:19-cv-02456-KJM<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Judge: Hon. Kimberly J. Mueller<br>Action Filed: December 9, 2019 |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1
BACKGROUND ........ 2
I. Summary of Assembly Bill 51 ........ 2
II. Legislative History of Assembly Bill 51 ........ 3
ARGUMENT ........ 4
I. Plaintiffs' Delay In Seeking Injunctive Relief Belies Their Claims of Urgency and Irreparable Harm, and Warrants Denial. ........ 5
II. Plaintiffs Are Not Likely to Succeed on the Merits of Their Preemption Claims. ........ 6
III. In the Absence of Preemption, Plaintiffs Cannot Show Irreparable Harm, and Plaintiffs Do Not Otherwise Demonstrate Irreparable Harm. ........ 9
IV. Plaintiffs Cannot Meet Their Burden to Show that the Balance of Equities Tip in Their Favor and that an Injunction Is in the Public Interest. ........ 9
CONCLUSION ........ 10

## TABLE OF AUTHORITIES

**Page**

CASES

*Abbott v. Perez*
138 S.Ct. 2305 (2018) .......... 10

*Am. Beverage Ass'n v. City & Cty. of San Francisco*
916 F.3d 749 (9th Cir. 2019) .......... 4

*Am. Trucking Ass'ns v. City of Los Angeles*
559 F.3d 1046 (9th Cir. 2009) .......... 5

*AT&T Mobility LLC v. Concepcion*
563 U.S. 333 (2011) .......... 8

*Avila v. Citi Mortg. Inc.*
No. 1:17-cv-1581-LJO-BAM, 2017 WL 5871473 (E.D. Cal. Nov. 29, 2017) .......... 5

*Epic Systems Corp. v. Lewis*
584 U.S. ___, 138 S.Ct. 1612 (2018) .......... 7

*Expose v. Fay Servicing, Inc.*
No. 2:19-cv-01866-TLN-KJN, 2019 WL 4640556 (E.D. Cal. Sept. 24, 2019) .......... 5, 6

*Gilmer v. Interstate/Johnson Lane Corp*.
500 U.S. 20 (1991) .......... 7

*Indep. Living Ctr., So. Cal. v. Maxwell-Jolly*
572 F.3d 644 (9th Cir. 2009) .......... 9

*Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*
137 S. Ct. 1421 (2017) .......... 8

*Lamps Plus, Inc. v. Varela*
139 S. Ct. 1407 (2019) .......... *passim*

*Perry v. Thomas*
482 U.S. 483 (1987) .......... 8

*Preston v. Ferrer*
522 U.S. 346 (2008) .......... 8

*Prima Paint Corp. v. Flood & Conklin Mfg. Co*.
388 U.S. 395 (1967) .......... 7

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*
559 U.S. 662 (2010) .......... 1, 4

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*Winter v. Natural Res. Def. Council*
555 U.S. 7 (2008) ........ *passim*

STATUTES

United States Code Title 9
§ 2 ........ 7

California Civil Code
§ 1670.11 ........ 4

California Code of Civil Procedure
§ 1001 ........ 4

California Fair Employment and Housing Act ........ *passim*

California Fair Pay Act ........ 4

California Government Code
§ 12953 ........ 3
§ 12964.5 ........ 4

California Labor Code
§ 432.6 ........ 7
§ 432.6(a)-(b) ........ *passim*
§ 432.6(f) ........ *passim*
§ 1197.5 ........ 4

California Statutes and Amendments to the Code (2019)
Ch. 711, § 1(a) ........ 2
Ch. 711, § 3 ........ *passim*

Federal Arbitration Act (FAA) ........ 1

COURT RULES

Federal Rules of Civil Procedure
rule 65(b)(1) ........ 5

Local Rules for the United States District Court Eastern District
rule 231(b) ........ *passim*

## TABLE OF AUTHORITIES
**(continued)**

**Page**

**OTHER AUTHORITIES**


Assembly Bill
No. 51 (2019) ........................................ *passim*
No. 3109 (2019) ........................................ 4

https://leginfo.legislature.ca.gov/faces/billHistoryClient.xhtml?bill_id=201920200AB51 ........................................ 1

https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200AB51 ........................................ 2

Senate Bill
No. 358 (2019) ........................................ 4
No. 820 (2019) ........................................ 4
No. 1300 (2019) ........................................ 4

## INTRODUCTION

Plaintiffs' sensationalized motion leaves the impression that California is prohibiting, even criminalizing, the use of arbitration agreements. (*See, e.g.*, Mot. 1:2-3.) This is not true. Assembly Bill 51 (AB 51) makes it unlawful for employers to ***require*** employees to "waive any right, forum or procedure for a violation of" the California Labor Code or the California Fair Employment and Housing Act, "as a condition of employment, continued employment, or receiving employment-related benefits." 2019 Cal. Stats. Ch. 711 (A.B. 51) § 3 (adding Cal. Lab. Code § 432.6(a)). In addition, it prohibits employers from retaliating against and/or terminating prospective or current employees "because of the refusal to consent to the waiver of any right, forum, or procedure" under California labor and employment laws. *Id.* (adding Cal. Lab. Code § 432.6(b)). AB 51 does not prevent parties from entering into arbitration agreements ***voluntarily.*** Nor does it single out arbitration agreements for different treatment, discourage arbitration, or interfere with the enforcement of arbitration agreements. Indeed, AB 51 expressly states that "[n]othing in this section is intended to invalidate a written arbitration agreement that is otherwise enforceable under the [Federal Arbitration Act]." *Id*. (adding Cal. Lab. Code § 432.6(f)). Moreover, its legislative history makes crystal clear that AB 51 does not affect even mandatory arbitration agreements if they have been freely signed. AB 51 focuses on employer behavior, and "AB 51 would not selectively invalidate arbitration contracts because [they are] improperly formed." Senate Judiciary Committee Bill Analysis (A.B. 51), July 8, 2019, at 10.[1]

Plaintiffs have not pointed to a substantive right under the Federal Arbitration Act (FAA) that allows them to force employees to waive any rights in favor of arbitration proceedings, and AB 51 does not violate Plaintiffs' claimed rights under the FAA, whatever they may be. There is no emergency here, no irreparable harm, and Plaintiffs are unlikely to succeed on the merits of their preemption claims. And contrary to Plaintiffs' contentions, AB 51 is consistent with the FAA's "basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Information Sciences, Inc. v.*

[1] The legislative bill analyses referenced in this brief may be found at https://leginfo.legislature.ca.gov/faces/billHistoryClient.xhtml?bill_id=201920200AB51 (last visited on Dec. 20, 2019).

*Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415–16 (2019) (same). AB 51 merely preserves the ability of employees to waive their rights voluntarily, and prohibits employers from retaliating against employees who choose not to waive their rights under California labor and employment laws.

Finally, Plaintiffs are not entitled to the extraordinary remedy of a temporary restraining order because they sat on their hands, and did not file their complaint and motion for a preliminary injunction until December 9—two months after the Governor signed AB 51 into law, and only a few weeks before AB 51 takes effect on January 1, 2020. Then, Plaintiffs waited another week, until midnight on December 16, to file their request for a temporary restraining order. This unexplained delay belies Plaintiffs' claimed emergency and irreparable harm. The motion for a temporary restraining order should be denied under Local Rule 231(b).

## BACKGROUND

### I. SUMMARY OF ASSEMBLY BILL 51.

AB 51 was approved by Governor Newsom and filed with the California Secretary of State on October 10, 2019.[2] The California Legislature found that "it is the policy of this state to ensure that all persons have the full benefits of the rights, forums, and procedures established in the California Fair Employment and Housing Act [. . .] and the Labor Code." 2019 Cal. Stats. Ch. 711 (A.B. 51) (Legislative Counsel's Digest) at § 1(a).[3] To ensure employees give up these rights voluntarily, in summary, the law will:

> prohibit a person from requiring any applicant for employment or any employee to waive any right, forum, or procedure for a violation of any provision of the California Fair Employment and Housing Act (FEHA) or other specific statutes

---

[2] The full text of Assembly Bill No. 51 may be found at https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200AB51 (last visited on Dec. 20, 2019).

[3] The Legislature recognized that waivers of rights by employees typically pertain to two types of disputes: "those arising over allegations of violations of the workplace rights enshrined in the Labor Code, and those arising over allegations of workplace discrimination, harassment, and retaliation as prohibited by FEHA." Senate Judiciary Committee Bill Analysis (A.B. 51), July 8, 2019, at 5. Absent contractual waivers, California employees are entitled to pursue most Labor Code violation claims through administrative proceedings, or directly in civil courts. *Id.* Similarly, in the absence of contractual waiver, California workers can file claims of workplace discrimination, harassment, or related retaliation through an administrative investigation and enforcement process, and, if unresolved, in court. *Id.* Workers can also pursue class actions. *Id.*

> governing employment as a condition of employment, continued employment, or the receipt of any employment-related benefit. The bill would also prohibit an employer from threatening, retaliating or discriminating against, or terminating any applicant for employment or any employee because of the refusal to consent to the waiver of any right, forum, or procedure for a violation of specific statutes governing employment.

2019 Cal. Stats. Ch. 711 (A.B. 51) (Legislative Counsel's Digest); *see also id*. at § 3 (adding Cal. Lab. Code § 432.6(a)-(b)). AB 51 makes a violation of the law an "unlawful employment practice." *Id*. (adding Cal. Gov't Code § 12953). And the only reference to arbitration in AB 51 expressly provides that "[n]othing in this section is intended to invalidate a written arbitration agreement that is otherwise enforceable under the [FAA]." *Id*. (adding Cal. Lab. Code § 432.6(f)).

## II. LEGISLATIVE HISTORY OF ASSEMBLY BILL 51.

AB 51's legislative history confirms that it neither bans the use of nor invalidates any arbitration agreements, and that the Legislature was cognizant of FAA preemption concerns. The final Senate Floor analysis specifically noted:

> understanding the Courts' hostile precedence [sic] toward policies that outright ban or invalidate arbitration agreements, AB 51 does neither. Both pre-dispute and post dispute agreements remain allowable and the bill takes no steps to invalidate any arbitration agreement that would otherwise be enforceable under the FAA. The steps help ensure this bill falls outside the purview of the FAA.

Senate Floor Analysis (A.B. 51), Sept. 1, 2019, at 4.

The Legislature further understood that "the bill does not prohibit, restrict, or discourage anyone from entering into a mandatory arbitration agreement, if they wish to consent to do so freely and voluntarily. It does not interfere with enforcement of arbitration agreements. In fact, once a mandatory arbitration agreement has been signed, this bill has nothing more to say about the situation." Senate Floor Analysis (A.B. 51), Sept. 1, 2019, at 5-6. "*All the bill does is say that an employee cannot be forced to sign an arbitration agreement, and if the employee elects not to, the employee cannot be retaliated against*." Senate Judiciary Committee Bill Analysis (A.B. 51), July 8, 2019, at 8 (emphasis added). Moreover, "the bill does not discriminate against arbitration because *its edicts apply equally to waiver of any dispute resolution forum or procedure*. AB 51 takes seriously the courts' repeated admonition that consent is the touchstone

of arbitration agreements. (*Stolt-Nielsen S. A. v. Animal Feeds Int'l Corp.* (2010) 559 U.S. 662, 681.)" *Id*. at 8 (emphasis added).

The Legislature also carefully considered prior attempts to enact similar legislation, including AB 3080. *See, e.g.*, Senate Judiciary Committee Bill Analysis (A.B. 51), July 8, 2019, at 10; Assembly Committee on Labor and Employment Bill Analysis (A.B. 51), March 4, 2019, at 3-4. Noting former Governor Brown's veto of AB 3080, the proponents of AB 51 made clear that "AB 51 would not selectively invalidate arbitration contracts because improperly formed." Senate Judiciary Committee Bill Analysis (A.B. 51), July 8, 2019, at 10. "AB 51 would not invalidate any contract once formed (though workers could still challenge the formation of a mandatory arbitration agreement on other grounds, as they can now)." *Id.*

In sum, the Legislature was mindful of potential FAA preemption, and focused narrowly on attempts by employers to require employees to waive legal rights and protections under labor and employment laws as a condition of employment.[4] Senate Judiciary Committee Bill Analysis (A.B. 51), July 8, 2019, at 7-8. Moreover, the Legislature deliberately steered clear of singling out arbitration agreements, or of legislating their formation, validity, or enforceability.

**ARGUMENT**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008); *Am. Beverage Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019). It is never awarded "as of right," but in each case, "courts must balance the competing

---

[4] California often legislates to address the potentially harmful power imbalance in many/most employer-employee relationships by prohibiting employer behavior that commands non-voluntary waiver of an employee's rights. Recent examples include the California Fair Pay Act (also known as Senate Bill 358) (2015), which amended Section 1197.5 of the California Labor Code to prohibit employers from retaliating against employees for discussing their own wages or the wages of others; Senate Bill 820 (2019), adding Code of Civil Procedure section 1001 to include a prohibition on employers requiring confidentiality clauses in settlement harassment settlements; Senate Bill 1300 (2019), adding Government Code section 12964.5, which makes it unlawful for an employer to require an employee to release Fair Employment and Housing Act claims or be silent about unlawful acts in the workplace unless the agreement is negotiated in the settlement of a lawsuit, and curtailing the use of non-disparagement agreements; and Assembly Bill 3109 (2019), adding Civil Code section 1670.11, which voids contract provisions that prevent a party from testifying about alleged criminal conduct or sexual harassment.

claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). Plaintiffs seeking a temporary restraining order (or a preliminary injunction) must demonstrate "(1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest." *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). Here, Plaintiffs fail to meet their burden.

## I. PLAINTIFFS' DELAY IN SEEKING INJUNCTIVE RELIEF BELIES THEIR CLAIMS OF URGENCY AND IRREPARABLE HARM, AND WARRANTS DENIAL.

Because temporary restraining orders are emergency measures, intended to preserve the status quo pending a fuller hearing on the injunctive relief requested, the claimed irreparable harm must be clearly immediate. Fed. R. Civ. Proc. 65(b)(1). This district's local rules further specify that the Court will consider "whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order." E.D. Cal. L.R. 231(b). Here, Plaintiffs could have sought a temporary restraining order when they served their complaint. Instead, they waited nearly a week after serving their motion for preliminary injunction. Plaintiffs' motion can and should be denied on this basis alone. *See, e.g., Expose v. Fay Servicing, Inc.,* No. 2:19-cv-01866-TLN-KJN, 2019 WL 4640556, *3 (E.D. Cal. Sept. 24, 2019) (denying motion for temporary restraining order under Local Rule 231(b) where plaintiff had notice of foreclosure sale a month before the sale, but filed the motion for temporary restraining order after the original date of the sale and a few days before the postponed date of sale, and filed the lawsuit the day before the motion.); *Avila v. Citi Mortg. Inc.*, No. 1:17-cv-1581-LJO-BAM, 2017 WL 5871473, at *1 (E.D. Cal. Nov. 29, 2017) (denying plaintiff's TRO request under Local Rule 231(b) because plaintiff received ample notice of foreclosure sale and failed to "explain why he waited until the last possible moment to attempt to block the sale").

Indeed, there was no need for a TRO here under any circumstance. AB 51 was signed into law on October 10, 2019—more than two months ago. Plaintiffs knew it would take effect

on January 1, 2020, but waited two months to file suit, and then dropped this motion on Defendants and the Court at midnight on December 16, 2019, asking for a hearing two-and-a-half days later—in the midst of the winter holidays when they knew Defendants and their counsel would be hard-pressed to respond to an urgent, substantive motion. In addition to filing their lawsuit sooner, Plaintiffs could have sought an order shortening time on their motion for a preliminary injunction, but chose not to do so. Instead, Plaintiffs filed two motions for urgent relief, instead of one, further burdening Defendants and the Court. Plaintiffs' unexplained delay and apparent gamesmanship belie their claims of urgency and irreparable harm, and should not be rewarded. *See Expose,* No. 2:19-cv-01866-TLN-KJN, 2019 WL 4640556, *3 (E.D. Cal. Sept. 24, 2019) (denying TRO under Local Rule 231(b) where plaintiff Plaintiffs had notice of foreclosure but did not file suit until days before the sale, and offered no justification for why they did not act sooner). The Court should use its discretion under Local Rule 231(b) to deny the motion for temporary restraining order.

## II. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS OF THEIR PREEMPTION CLAIMS.

Plaintiffs are not likely to succeed on the merits because AB 51 does not conflict with the FAA or pose any obstacle to the achievement of Congressional purposes. Instead, it regulates employment practices, and ensures that employee waivers of rights and remedies in the employment context are consensual. It does not alter California contract law. Indeed, far from conflicting with the FAA, it is fully consistent with the spirit and foundational principles of the FAA. "'[T]he first principle that underscores all of our arbitration decisions' is that '[a]rbitration is strictly a matter of consent.'" *Lamps Plus*, 139 S. Ct. at 1415 (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299 (2010)). The Supreme Court has emphasized this "'foundational FAA principle' many times." *Id.* (quoting *Stolt-Nielsen*, 559 U.S. at 684, and citing to *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995); *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ*., 489 U.S. 468, 479 (1989); and *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S.

614, 626 (1985)).

Amplifying the point that the FAA requires arbitration to be a consensual matter, Congress enacted the FAA in 1925 "to enable merchants of roughly equal bargaining power to enter into binding agreements to arbitrate commercial disputes." *Epic Systems Corp. v. Lewis*, 584 U.S. ——, ——, 138 S.Ct. 1612, 1643 (2018) (Ginsberg, J., dissenting); *see also Lamps Plus*, 139 S. Ct. at 1420 (Ginsberg, J. dissenting). The FAA was not designed to govern contracts "in which one of the parties characteristically has little bargaining power." *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 403, n. 9 (1967); *see also Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 42 (1991) (Stevens, J., dissenting) ("I doubt that any legislator who voted for [the FAA] expected it to apply ... to form contracts between parties of unequal bargaining power, or to the arbitration of disputes arising out of the employment relationship.").

Here, AB 51 furthers the foundational principles of consent and equal bargaining power in the FAA. It does not govern or single out arbitration agreements; rather, it regulates the hiring and employment practices of employers to preserve employee autonomy in deciding whether to waive their legal rights and remedies under labor and employment laws.

The California Legislature acknowledged the broad reach of the FAA, and took pains to avoid running afoul of it. *See, e.g.*, Senate Floor Analysis (A.B. 51), Sept. 1, 2019, at 5-6; Senate Judiciary Committee Bill Analysis (A.B. 51), July 8, 2019, at 7-10. Thus, Section 432.6 does not single out arbitration agreements for unequal treatment. *See generally* 2019 Cal. Stats. Ch. 711 § 3 (adding Cal. Lab. Code § 432.6). Rather, for both arbitration and non-arbitration agreements, it simply provides that employees "cannot be forced" to waive the rights and protections afforded them under the law. Senate Judiciary Committee Bill Analysis (A.B. 51), July 8, 2019, at 7-8; *see also* 2019 Cal. Stats. Ch. 711 § 3 (adding Cal. Lab. Code § 432.6(a) (prohibiting employers from "requiring any applicant for employment or any employee to waive any right, forum, or procedure . . . .")). Thus, contrary to Plaintiffs' contentions, AB 51 does not run afoul of Section 2 of the FAA (9 U.S.C. § 2). Similarly, AB 51 is also consistent with the Supreme Court's admonition that, under Section 2, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v.*

*Concepcion*, 563 U.S. 333, 339 (2011), *accord Lamps Plus*, 139 S. Ct. at 1412.

The Supreme Court's decision in *Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*, 137 S. Ct. 1421 (2017), is also inapposite. In *Kindred Nursing*, the Court invalidated a Kentucky rule requiring express authorization in a power-of-attorney before a representative could agree to arbitration on behalf of their principal—known as the clear-statement rule. The clear-statement rule interfered with arbitration agreements and was preempted because it (1) singled out arbitration and (2) created a barrier to enforcement of arbitration agreements by imposing additional requirements to demonstrate the validity of an arbitration agreement. AB 51 does neither of these things, expressly or implicitly.

Plaintiffs make much of the Supreme Court's statement that "[a] rule selectively finding arbitration contracts invalid because improperly formed fares no better under the [FAA] than a rule selectively refusing to enforce those agreements once properly made." *Kindred Nursing Ctrs. Ltd. P'Ship*, 137 S. Ct. at 1428. But AB 51 differs considerably from Kentucky's clear-statement rule. Here, there is no interference with contract formation based on authority to enter into a contract, no concern about contract validity, no barriers to enforcement, and it does not single out arbitration agreements. Section 432.6(f) specifically provides that "[n]othing in this section is intended to invalidate a written arbitration agreement that is otherwise enforceable under the [FAA]." Rather, AB 51 focuses on unfair hiring practices, and merely seeks to ensure parties entering into waiver agreements do so voluntarily. Again, the focus of AB 51 is on the behavior of the employer, not the formation of arbitration agreements or the conditions that must be shown to demonstrate that an arbitration agreement is either valid or invalid.

Finally, AB 51 is neutral and does not disfavor arbitration. Again, it only applies to the required waiver of "any right, forum, or procedure," whether by arbitration agreement, employment agreement, or otherwise; therefore, *Preston v. Ferrer*, 522 U.S. 346 (2008) (FAA preempts code provisions that disfavor arbitration), *Perry v. Thomas*, 482 U.S. 483, 484 (1987) (same), and similar cases are not implicated here.

In sum, AB 51 does not conflict with the FAA, and does not pose an obstacle to the achievement of Congress's purposes in passing the FAA.

## III. IN THE ABSENCE OF PREEMPTION, PLAINTIFFS CANNOT SHOW IRREPARABLE HARM, AND PLAINTIFFS DO NOT OTHERWISE DEMONSTRATE IRREPARABLE HARM.

AB 51 does not prevent the resolution of disputes through arbitration or any other alternative dispute mechanism. As demonstrated above, it merely prohibits employers from requiring employees to waive rights, forums, and procedures under California labor and employment laws. In the absence of any likely FAA preemption, Plaintiffs cannot show irreparable harm.

In any case, Plaintiffs fail to meet their burden of showing they will suffer immediate, irreparable harm in the absence of a temporary restraining order. The Declaration of Brian Maas is rife with conjecture, baseless assertions, and opinion.[5] For example, while it may be true that some California employers will have to reconsider their hiring packets (Maas Decl. ¶ 23), the claim that employers will lose the benefits of arbitration (*id*. ¶ 26) is highly speculative, and it is incorrect that employers would be "deprived of the benefit of predispute arbitration agreements." (*Id*. ¶ 27.) There is no evidence offered that employers will be unable to obtain voluntary waivers. Nothing in AB 51 prevents employers and their employees from entering into agreements to arbitrate. Plaintiffs have not met their burden of establishing irreparable harm.

## IV. PLAINTIFFS CANNOT MEET THEIR BURDEN TO SHOW THAT THE BALANCE OF EQUITIES TIP IN THEIR FAVOR AND THAT AN INJUNCTION IS IN THE PUBLIC INTEREST.

In exercising sound discretion, a district court "must balance the competing claims of injury and consider the effect of granting or withholding the requested relief," paying "particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quotation marks and citation omitted). "The public interest analysis for the issuance of a preliminary injunction requires [the Court] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Indep. Living Ctr., So. Cal. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. 2009), *vacated and remanded on other grounds,* 132 S. Ct. 1204 (2012).

---

[5] Defendants will file objections to certain portions of the Maas Declaration concurrently with this opposition.

Plaintiffs cannot establish harm sufficient to outweigh the fact that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Abbott v. Perez*, 138 S.Ct. 2305, 2324 n.17 (2018) ("the inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State") (citation omitted). And an injunction prohibiting the enforcement of AB 51 would run counter to the public interest, because it would effectively license employers to force their employees to waive legal protections and remedies. Moreover, it would extend the FAA's reach into areas of traditional state concern and legislation. The FAA addresses arbitration agreements, but it does not go so far as to regulate employment practices. It is in the public interest that agreements to waive important state law protections are consensual, as AB 51 requires. Because "[a]rbitration is strictly a matter of consent," *Lamps Plus*, 139 S. Ct. at 1415, AB 51 is consistent with the FAA, and it would run against the public interest to enjoin its enforcement.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for temporary restraining order should be denied.

Dated: December 20, 2019

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
TAMER PACHTER
Supervising Deputy Attorney General

/ s / *Chad A. Stegeman*
CHAD A. STEGEMAN
Deputy Attorney General
*Attorneys for Defendants Xavier Becerra, Lilia-Garcia Brower, Julie A. Su, and Kevin Kish, in their official capacities*

SA2019106348
AUSE COC TRO Oppn (12 20 Final).docx