1   XAVIER BECERRA, State Bar No. 118517
    Attorney General of California
2   TAMAR PACHTER, State Bar No. 146083
    Supervising Deputy Attorney General
3   CHAD A. STEGEMAN, State Bar No. 225745
    Deputy Attorney General V
4     455 Golden Gate Ave., Ste. 11000
      San Francisco, CA  94102-7004
5     Telephone:  (415) 510-3624
      Fax:  (415) 703-5843
6     E-mail:  Chad.Stegeman@doj.ca.gov
    *Attorneys for Defendants Xavier Becerra, Lilia*
7   *Garcia-Brower, Julie A. Su, and Kevin Kish, in their*
    *official capacities*

8                  IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10                         SACRAMENTO DIVISION

11

12

13  | **CHAMBER OF COMMERCE OF THE** | 2:19-cv-02456-KJM-DB |
    | **UNITED STATES OF AMERICA, et al.,** | |

14  | | |
    | Plaintiffs, | |

15  | | **DEFENDANTS' OPPOSITION TO** |
    | v. | **MOTION FOR PRELIMINARY** |
16  | | **INJUNCTION** |

17  **XAVIER BECERRA, LILIA GARCIA-**
    **BROWER, JULIE A. SU, and KEVIN**
18  **KISH, in their official capacities,**

    Date:       January 10, 2020
    Time:       10:00 a.m.
    Location:   Courtroom 3, 15th Flr
    Judge:      Kimberly J. Mueller

19                                Defendants.

    Action Filed:  December 9, 2019

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

    I.    Assembly Bill 51 ................................................................................................. 2

    II.    Legislative History of Assembly Bill 51 ............................................................ 3

ARGUMENT ...................................................................................................................... 5

    I.    Plaintiffs Are Not Likely to Succeed on the Merits of Their Preemption
        Claims. ............................................................................................................... 5

    II.    In the Absence of FAA Preemption, Plaintiffs Cannot Show Irreparable
        Harm, and Plaintiffs Do Not Otherwise Demonstrate Irreparable Harm. ............. 10

    III.    Plaintiffs Cannot Meet Their Burden to Show that the Balance of Equities
        Tips in Their Favor and that an Injunction Is in the Public Interest. ................... 12

CONCLUSION ................................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abbott v. Perez*
    138 S.Ct. 2305 (2018) ..................................................................................13

*Am. Beverage Ass'n v. City & Cty. of San Francisco*
    916 F.3d 749 (9th Cir. 2019).........................................................................5

*AT&T Mobility LLC v. Concepcion*
    131 S. Ct. 1740 (2011) ...............................................................................6, 7

*Camp v. Alexander*
    300 F.R.D. 617 (N.D. Cal. 2014) ..................................................................7

*First Options of Chicago, Inc. v. Kaplan*
    514 U.S. 938 (1995)..................................................................................6, 15

*Garcia v. Google, Inc.*
    786 F.3d 733 (9th Cir. 2015).........................................................................5

*Granite Rock Co. v. Teamsters*
    561 U.S. 287 (2010) ......................................................................................6

*Harden v. Roadway Package Systems, Inc.*
    249 F. 3d 1137 (9th Cir. 2001).....................................................................11

*Howard v. Ferrellgas Partners, L.P.*
    748 F.3d 975 (10th Cir. 2014).......................................................................6

*Howsam v. Dean Witter Reynolds, Inc.*
    537 U.S. 79 (2002) ..................................................................................6, 15

*Indep. Living Ctr., So. Cal. v. Maxwell-Jolly*
    572 F.3d 644 (9th Cir. 2009).......................................................................13

*Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*
    137 S. Ct. 1421 (2017)...............................................................................8, 9

*Lamps Plus, Inc. v. Varela*
    139 S. Ct. 1407 (2019) ......................................................................... *passim*

*Mastrobuono v. Shearson Lehman Hutton, Inc.*
    514 U.S. 52 (1995)..................................................................................6, 15

ii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*
  473 U.S. 614 (1985)................................................................................................6

*Perry v. Thomas*
  482 U.S. 483 (1987)................................................................................................9

*Preston v. Ferrer*
  522 U.S. 346 (2008)................................................................................................9

*Stolt-Nielsen S. A. v. Animal Feeds Int'l Corp.*
  559 U.S. 662 (2010)......................................................................................3, 6, 15

*Univ. of Texas v. Camenisch*
  451 U.S. 390 (1981)................................................................................................5

*Valle del Sol Inc. v. Whiting*
  732 F.3d 1006 (9th Cir. 2013)..............................................................................12

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior*
  *Univ.*
  489 U.S. 468 (1989)..........................................................................................6, 15

*Winter v. Nat'l Res. Def. Council, Inc.*
  555 U.S. 7 (2008)...............................................................................5, 12, 13, 15

**STATUTES**

United States Code
  Title 9, § 1 ...........................................................................................................11
  Title 29, § 151 ......................................................................................................14

California Civil Code
  § 1670.11 ................................................................................................................8

California Code of Civil Procedure
  § 1001 .....................................................................................................................7

California Government Code
  § 12953 ...................................................................................................................2
  § 12964.5 ................................................................................................................7

California Labor Code
  § 432.6 ............................................................................................................. *passim*
  § 433 .....................................................................................................................12
  § 923 .....................................................................................................................15
  § 1197.5 ..................................................................................................................7

### TABLE OF AUTHORITIES
#### (continued)

**Page**

California Statutes and Amendments to the Code
Ch. 546 (2015)(S.B. 358) ............................................................................7
Ch. 711 (2019)(A.B. 51) ........................................................................ *passim*
Ch. 870 (2019)(S.B. 707) ..........................................................................10
Ch. 953 (2019)(S.B. 820) ............................................................................7
Ch. 955 (2019)(S.B. 1300) ..........................................................................7
Ch. 9949 (2019)(A.B. 3109) ...................................................................7, 8

OTHER AUTHORITIES

Assembly Bill No.
3080 (unenacted) ..................................................................................4

California Fair Employment and Housing Act ........................................2, 7

California Fair Pay Act ...............................................................................7

Campbell, *Google employees fought for their right to sue the company — and
won*, Vox, Feb. 22, 2019,
https://www.vox.com/technology/2019/2/22/18236172/mandatory-forced-
arbitration-google-employees (last visited on Dec. 27, 2019) .................11

Estlund, Cynthia *The Black Hole of Mandatory Arbitration*, 96 N.C. L. Rev. 679
(2018) ....................................................................................................10

Federal Arbitration Act
9 U.S.C. § 2 ....................................................................................1, 6, 7

Forced Arbitration Injustice Repeal Act ..................................................14

House Bill No.
1423, 116th Cong. (1st Sess. 2019) ................................................10, 14

Martinez, *Facebook, Airbnb and eBay join Google in ending forced arbitration for
sexual harassment claims*, NBC News, Nov. 12, 2018 ......................11, 13

Martins, *Forced Arbitration Under Fire as Google Axes Policy*, Business News
Daily, Feb. 22, 2019, https://www.businessnewsdaily.com/11302-google-axes-
forced-arbitration.html (last visited on Dec. 27, 2019) ........................11

Senate Bill No.
358 .........................................................................................................7
820 (2019) ..............................................................................................7
1300 (2019) ............................................................................................7

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*State AGs Demand An End To 'Culture Of Silence' Surrounding Sexual
Harassment*, Huffington Post, Feb. 13, 2018,
https://www.huffpost.com/entry/attorneys-general-forced-
arbitration_n_5a83484fe4b0cf06751f5abe (last visited on Dec. 27, 2019)..............................14

**INTRODUCTION**

The Court should not preliminarily enjoin enforcement of Assembly Bill 51 (AB 51) because the claim of Federal Arbitration Act (FAA) preemption is unlikely to succeed—AB 51 neither conflicts with the FAA, nor does it even affect any agreement.  Instead, AB 51 regulates employer policies and practices, as do many state labor laws, by making it unlawful for them to require anyone to "waive any right, forum or procedure for a violation of" the California Labor Code or the Fair Employment and Housing Act, "as a condition of employment, continued employment, or receiving employment-related benefits."  2019 Cal. Stats. Ch. 711 (A.B. 51), § 3 (adding Cal. Lab. Code § 432.6(a)).  It also prohibits employers from retaliating against and/or terminating prospective or current employees "because of the refusal to consent to the waiver of any right, forum, or procedure" under California labor and employment laws.  *Id.* (adding Cal. Lab. Code § 432.6(b)).  AB 51 is consistent with the FAA's fundamental precept that agreements to arbitrate must be consensual, not coerced.  By its terms, it does not regulate or invalidate any agreement to arbitrate, discourage arbitration, or single out arbitration agreements for regulation.  Nor does AB 51 create uncommon barriers to arbitration.  Even arbitration agreements entered into as a condition of employment after AB 51's effective date will be enforceable because it is ***only*** the pre-formulation conduct of employers that is at issue, not the agreements themselves.

Plaintiffs cannot show that AB 51 conflicts with the FAA or any Congressional purpose animating the FAA.  They simply cannot identify any substantive right conferred by the FAA that would allow employers to force employees to agree to waive their rights under state law by agreeing to mandatory arbitration as a condition of employment.  The FAA does not extend to the pre-contract formation behavior of employers that AB 51 regulates.

Relatedly, Plaintiffs have not and cannot establish that AB 51's requirement that employers obtain un-coerced consent will harm them, let alone harm them irreparably.  Many large employers already avoid forced waivers of employment rights and remedies as a matter of policy.  Instead, the State and the public interest will suffer irreparable harm by entry of an injunction that would effectively sanction such forced agreements and abrogate state law.  Accordingly, the motion for preliminary injunction should be denied.

1

# BACKGROUND

## I.   ASSEMBLY BILL 51.

AB 51 was chaptered on October 10, 2019, and becomes effective on January 1, 2020. 2019 Cal. Stats. Ch. 711 (A.B. 51) (Legislative Counsel's Digest), at § 3(h).[1]  The California Legislature found that "it is the policy of this state to ensure that all persons have the full benefits of the rights, forums, and procedures established in the California Fair Employment and Housing Act [. . .] and the Labor Code." *Id.* at § 1(a).[2]

To ensure employees give up these rights voluntarily, in summary, the law will:

> prohibit a person from requiring any applicant for employment or any employee to waive any right, forum, or procedure for a violation of any provision of the California Fair Employment and Housing Act (FEHA) or other specific statutes governing employment as a condition of employment, continued employment, or the receipt of any employment-related benefit. The bill would also prohibit an employer from threatening, retaliating or discriminating against, or terminating any applicant for employment or any employee because of the refusal to consent to the waiver of any right, forum, or procedure for a violation of specific statutes governing employment.

2019 Cal. Stats. Ch. 711 (A.B. 51) (Legislative Counsel's Digest); *see also id.* at § 3 (adding Cal. Lab. Code § 432.6(a)-(b)).  AB 51 makes a violation of the law an "unlawful employment practice." *Id.* (adding Cal. Gov't Code § 12953).  The only reference to arbitration in AB 51 provides that "[n]othing in this section is intended to invalidate a written arbitration agreement that is otherwise enforceable under the [FAA]." *Id.* (adding Cal. Lab. Code § 432.6(f)).

///

///

---

[1] The full text of Assembly Bill No. 51 may be found at https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200AB51 (last visited on Dec. 27, 2019).

[2] The Legislature recognized that waivers of rights by employees typically pertain to two types of disputes: "those arising over allegations of violations of the workplace rights enshrined in the Labor Code, and those arising over allegations of workplace discrimination, harassment, and retaliation as prohibited by FEHA."  Senate Judiciary Committee Bill Analysis (A.B. 51), July 8, 2019, at 5.  Absent contractual waivers, California employees are entitled to pursue most Labor Code violation claims through administrative proceedings, or directly in civil courts. *Id.* Similarly, in the absence of contractual waiver, California workers can file claims of workplace discrimination, harassment, or related retaliation through an administrative investigation and enforcement process, and, if unresolved, in court. *Id.*  Workers can also pursue class actions. *Id.*

2

## II.   LEGISLATIVE HISTORY OF ASSEMBLY BILL 51.

The legislative history confirms that AB 51 neither bans the use of nor invalidates any arbitration agreements, and that the Legislature recognized the scope of and worked to avoid FAA preemption.   The final Senate Floor analysis specifically noted:

> Both pre-dispute and post dispute agreements remain allowable and the bill takes no steps to invalidate any arbitration agreement that would otherwise be enforceable under the FAA. The steps help ensure this bill falls outside the purview of the FAA.

Senate Floor Analysis (A.B. 51), Sept. 1, 2019, at 4.[3]

The Legislature explained that "the bill does not prohibit, restrict, or discourage anyone from entering into a mandatory arbitration agreement, if they wish to consent to do so freely and voluntarily.  It does not interfere with enforcement of arbitration agreements.  In fact, once a mandatory arbitration agreement has been signed, this bill has nothing more to say about the situation."  Senate Floor Analysis (A.B. 51), Sept. 1, 2019, at 5-6.  "*All the bill does is say that an employee cannot be forced to sign an arbitration agreement, and if the employee elects not to, the employee cannot be retaliated against*."  Senate Judiciary Committee Bill Analysis (A.B. 51), July 8, 2019, at 8 (emphasis added).  Moreover, "the bill does not discriminate against arbitration because *its edicts apply equally to waiver of any dispute resolution forum or procedure*.  AB 51 takes seriously the courts' repeated admonition that consent is the touchstone of arbitration agreements.  (*Stolt-Nielsen S. A. v. Animal Feeds Int'l Corp.* (2010) 559 U.S. 662, 681.)"  *Id*. at 8 (emphasis added).

The Legislature also carefully considered prior attempts to enact similar legislation, including AB 3080, in an effort to avoid a meritorious FAA preemption claim.  *See, e.g.*, Senate Judiciary Committee Bill Analysis (A.B. 51), July 8, 2019, at 10; Assembly Committee on Labor and Employment Bill Analysis (A.B. 51), March 4, 2019, at 3-4.  Noting former Governor Brown's veto of AB 3080, the proponents of AB 51 made clear that in contrast, "AB 51 would not selectively invalidate arbitration contracts because improperly formed."  Senate Judiciary

---

[3] The AB 51 legislative bill analyses referenced in this brief may be found at https://leginfo.legislature.ca.gov/faces/billHistoryClient.xhtml?bill_id=201920200AB51 (last visited on Dec. 27, 2019).

3

1   Committee Bill Analysis (A.B. 51), July 8, 2019, at 10.  "AB 51 would not invalidate any

2   contract once formed (though workers could still challenge the formation of a mandatory

3   arbitration agreement on other grounds, as they can now)."  *Id.*

4         To this end, AB 51 included two provisions that were not part of AB 3080.[4]  First, to ensure

5   that even those contracts entered into in violation of AB 51 could not be held invalidly formed on

6   that basis, they provided that "Nothing in this section is intended to invalidate a written

7   arbitration agreement that is otherwise enforceable under the [FAA]."  2019 Cal. Stats. Ch. 711

8   (A.B. 51) (Legislative Counsel's Digest), § 3 (adding Cal. Lab. Code § 432.6(f)).  Second, to

9   address other concerns of opponents, including plaintiff California Chamber of Commerce, the

10  bill states "This section does not apply to postdispute settlement agreements or negotiated

11  severance agreements."  *Id.* at § 3 (adding Cal. Lab. Code § 432.6(g)).  The two bills also differed

12  in other ways.  AB 3080 focused on mandatory non-disclosure agreements entered into by

13  employees and independent contractors in connection with sexual harassment suffered, witnessed,

14  or discovered in the workplace, or agreements prohibiting the exercise of rights or obligations

15  concerning the investigation or proceeding with respect to unlawful harassment or discrimination.

16  *See* Senate Floor Analysis (A.B. 3080), Aug. 20, 2018, at 1, 3-4.[5]  AB 51 borrowed from portions

17  of AB 3080 pertaining to hiring policies requiring waiver of rights, forums, or procedures under

18  California law, but did not focus on non-disclosure agreements, non-disparagement clauses, and

19  purposefully avoids conflict with the FAA.

20        In sum, the Legislature was mindful of potential FAA preemption, and focused narrowly

21  on attempts by employers to require employees to waive any legal rights and protections afforded

22  by labor and employment laws as a condition of employment.  Senate Judiciary Committee Bill

23  Analysis (A.B. 51), July 8, 2019, at 7-8.  The Legislature carefully avoided singling out

24  arbitration agreements, or regulating their formation, validity, or enforceability.  Assembly

25  _____

26  [4] The full text of Assembly Bill No. 3080 may be found at
    https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201720180AB3080 (last
    visited on Dec. 27, 2019).

27  [5] The AB 3080 legislative bill analyses referenced in this brief may be found at
    https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180AB3080 (last
28  visited Dec. 27, 2019).

4

Committee on Labor and Employment Bill Analysis (A.B. 51), March 4, 2019, at 2.

## ARGUMENT

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Am. Beverage Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019).  It is never awarded "as of right," but in each case, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted).  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added).

To prevail on their motion for a preliminary injunction, Plaintiffs must establish:  (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest.  *Winter*, 555 U.S. at 20.  "Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, [the Court] need not consider the remaining three *Winter* elements." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

Plaintiffs fail to establish any of the *Winter* elements.

## I.   PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS OF THEIR PREEMPTION CLAIMS.

Plaintiffs are unlikely to succeed on the merits of their claim that the FAA preempts AB 51 because AB 51 does not regulate agreements; rather, it regulates employer efforts to coerce agreements waiving employment and labor law rights.  Notably, unlike every FAA Supreme Court case cited by the Plaintiffs, there is no arbitration agreement at the center of this lawsuit.  And there will not be one in the future.  AB 51 does not regulate either pre-dispute or post-dispute arbitration agreements, and it does not render invalid any arbitration agreement that would otherwise be enforceable under the FAA—even where the employer violated AB 51.  And the FAA does not give employers, or anyone, a right to coerce arbitration agreements.  Plaintiffs' contrary argument that the FAA authorizes employers to force employees to waive employment

5

1  rights and protections is antithetical to the fundamental FAA precept that arbitration "is a matter

2  of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp*., 559 U.S. 662, 681

3  (2010) (internal quotations omitted); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415–

4  16 (2019).

5          AB 51 does not conflict with the FAA or pose any obstacle to the achievement of its

6  purpose.  By regulating employment practices prior to entry into any agreement, AB 51 seeks to

7  ensure that any waiver of rights and remedies in the employment context is consensual.  This is

8  fully consistent with the spirit and foundational principles of the FAA.  "'[T]he first principle that

9  underscores all of our arbitration decisions' is that '[a]rbitration is strictly a matter of consent.'"

10  *Lamps Plus*, 139 S. Ct. at 1415 (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299

11  (2010)).  The Supreme Court has emphasized this "'foundational FAA principle' many times."

12  *Id.* (quoting *Stolt-Nielsen*, 559 U.S. at 684, and citing to *Howsam v. Dean Witter Reynolds, Inc.*,

13  537 U.S. 79, 83 (2002); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995);

14  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995); *Volt Information*

15  *Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989);

16  and *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985)).  Then-

17  Circuit Judge Gorsuch recognized that "before the Act's heavy hand in favor of arbitration swings

18  into play, the parties themselves must *agree* to have their disputes arbitrated.  While Congress has

19  chosen to preempt state laws that aim to channel disputes into litigation rather than arbitration,

20  even under the FAA it remains a 'fundamental principle' that 'arbitration is a matter of contract,'

21  not something to be foisted on the parties at all costs." *Howard v. Ferrellgas Partners, L.P*., 748

22  F.3d 975, 977 (10th Cir. 2014) (quoting *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740,

23  1745 (2011)) (emphasis in original).  AB 51 furthers the foundational principles of consent and

24  seeks to mitigate hiring policies that "foist" waivers on employees.  It regulates not arbitration

25  agreements but the hiring and employment practices of employers to preserve employee

26  autonomy in deciding whether to waive their legal rights and remedies under labor and

27  employment laws.

28          Contrary to Plaintiffs' contentions, AB 51 does not contravene Section 2 of the FAA.  The

6

Supreme Court has admonished that, under Section 2, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Concepcion*, 563 U.S. at 339, *accord Lamps Plus*, 139 S. Ct. at 1412.  The California Legislature acknowledged the broad reach of FAA preemption, and took pains to avoid running afoul of it. *See, e.g.*, Senate Floor Analysis (A.B. 51), Sept. 1, 2019, at 5-6; Senate Judiciary Committee Bill Analysis (A.B. 51), July 8, 2019, at 7-10.  Specifically, section 432.6 does not single out arbitration agreements for unequal treatment.  *See generally* 2019 Cal. Stats. Ch. 711 (Legislative Counsel's Digest), § 3 (adding Cal. Lab. Code § 432.6).  Rather, for both arbitration and other types of employment agreements, it simply provides that employees "cannot be forced" to waive the rights and protections afforded them under the law.  Senate Judiciary Committee Bill Analysis (A.B. 51), July 8, 2019, at 7-8; *see also* 2019 Cal. Stats. Ch. 711 (Legislative Counsel's Digest), § 3 (adding Cal. Lab. Code § 432.6(a) (prohibiting employers from "requiring any applicant for employment or any employee to waive any right, forum, or procedure . . . .")).

Indeed, AB 51 reflects California's ongoing effort to address the inherent power imbalance in employer-employee relationships.  *See, e.g., Camp v. Alexander*, 300 F.R.D. 617, 625 (N.D. Cal. 2014) (recognizing "significant power imbalance between an employer and its employees").  California has enacted numerous other laws like AB 51 that prohibit certain employer behavior, including policies that coerce waiver of an employee's rights.  For instance, the California Fair Pay Act (also known as Senate Bill 358) (2015), amended Section 1197.5 of the California Labor Code to prohibit employers from retaliating against employees for discussing their own wages or the wages of others.  *See* 2015 Cal. Stats. Ch. 546 (S.B. 358). Senate Bill 820 (2019) added Code of Civil Procedure section 1001 to prohibit employers from requiring nondisclsoure clauses in agreements settling claims of sexual assault and harassment. *See* 2019 Cal. Stats. Ch. 953 (S.B. 820).  Senate Bill 1300 (2019) added Government Code section 12964.5, which makes it unlawful for an employer to require an employee to release Fair Employment and Housing Act claims or be silent about unlawful acts in the workplace unless the agreement is negotiated in the settlement of a lawsuit, and curtailing the use of non-disparagement agreements.  *See* 2019 Cal. Stats. Ch. 955 (S.B. 1300).  And Assembly Bill 3109

7

1   (2019), added Civil Code section 1670.11, which voids contract provisions that prevent a party

2   from testifying about alleged criminal conduct or sexual harassment. *See* 2019 Cal. Stats. Ch.

3   9949 (A.B. 3109). So AB 51's prohibition on employment practices that coerce waiver of

4   employment rights and procedures by making agreement to such waivers a condition of

5   employment is not unusual and does not single out arbitration for different treatment.

6       The Supreme Court's decision in *Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*, 137 S. Ct.

7   1421 (2017), is inapposite. There, the Court invalidated a Kentucky rule requiring express

8   authorization in a power-of-attorney before a representative could agree to arbitration on behalf of

9   their principal—known as the clear-statement rule. The clear-statement rule interfered with

10   arbitration agreements and was preempted because it (1) singled out arbitration, and (2) created a

11   barrier to enforcement of arbitration agreements by imposing additional requirements to

12   demonstrate the validity of an arbitration agreement. AB 51 does neither of these things,

13   expressly or implicitly, as it does not affect the formation of any agreement, does not address any

14   issue of contract validity, and creates no barriers to the enforcement of arbitration agreements.

15   2019 Cal. Stats. Ch. 711 (A.B. 51) (Legislative Counsel's Digest), § 3 (adding Cal. Lab. Code §

16   432.6(f)). *Kindred Nursing* admonished that "[a] rule selectively finding arbitration contracts

17   invalid because improperly formed fares no better under the [FAA] than a rule selectively

18   refusing to enforce those agreements once properly made." *Kindred Nursing*, 137 S. Ct. at 1428.

19   But AB 51 differs considerably from Kentucky's clear-statement rule. By contrast, under AB 51,

20   there is no interference with contract formation based on authority to enter into a contract, no

21   concern about contract validity, no barriers to enforcement, and no singling out of arbitration

22   agreements for regulation. Section 432.6(f) specifically provides that "[n]othing in this section is

23   intended to invalidate a written arbitration agreement that is otherwise enforceable under the

24   [FAA]." Therefore, even employees coerced into agreeing to mandatory arbitration as a

25   condition of employment in violation of AB 51 cannot rely on AB 51 to argue the agreement is

26   invalid. This is explicit in the legislative history:

27         the bill's provisions regarding waivers shall not be construed to provide a basis on
           which to challenge the validity, enforceability, or consciousability of any contract

28         or provision therein, once lawfully executed, nor to restrict or expand other legal

8

grounds to challenge the validity, enforceability, or consionability of a contract or provision therein, once executed.

Assembly Committee on Labor and Employment Bill Analysis (A.B. 51), March 4, 2019, at 2; *see also* Senate Judiciary Committee Bill Analysis (A.B. 51), July 8, 2019, at 10. AB 51 focuses on employer behavior, not contract formation, and "AB 51 would not selectively invalidate arbitration contracts because [they are] improperly formed."). AB 51 merely seeks to ensure parties entering into waiver agreements do so consensually, consistent with the FAA. It does not subject arbitration agreements, "by virtue of their defining trait, to uncommon barriers," *Kindred Nursing*, 137 S. Ct. at 1427, as Plaintiffs suggest. Again, AB 51 regulates the behavior of employers, not the formation of arbitration agreements (or any agreement) or the conditions that must be shown to demonstrate that an arbitration agreement (or any agreement) is either valid or invalid.

Finally, AB 51 is neutral and does not disfavor arbitration. It applies generally to any employer hiring policy or practice that requires waiver of "any right, forum, or procedure"; therefore, *Preston v. Ferrer*, 522 U.S. 346 (2008) (FAA preempts code provisions that disfavor arbitration), *Perry v. Thomas*, 482 U.S. 483, 484 (1987) (same), and similar cases are not implicated here.

In sum, Plaintiffs are unlikely to prevail on the merits of their preemption claim because AB 51 does not conflict with the FAA, and does not pose an obstacle to the achievement of Congress's purposes in passing the FAA. Accordingly, preliminary injunctive relief should be denied.

///

///

///

///

///

///

///

9

**II.    IN THE ABSENCE OF FAA PREEMPTION, PLAINTIFFS CANNOT SHOW IRREPARABLE HARM, AND PLAINTIFFS DO NOT OTHERWISE DEMONSTRATE IRREPARABLE HARM.**

In the absence of FAA preemption, Plaintiffs cannot show irreparable harm,[6] and Plaintiffs otherwise fail to meet their burden of showing they will suffer immediate, irreparable harm in the absence of a preliminary injunction.  Plaintiffs argue that "the only practical approach to ensure compliance with AB 51 is to cease entering into predispute arbitration agreements with their employees."  (Mot. at 20:19-20.)  This is a dramatic overstatement, as there appear to be many practical alternatives to giving up on predispute agreements.  For instance, employers could simply eliminate the policy of requiring waivers as a condition of employment, as some already have.  They could include a notice explaining that AB 51 prohibits a forced waiver of rights as a condition of employment, so the employee could freely choose to enter into an agreement.  The employer could notify employees of the requirements of AB 51, and require a signed acknowledgment of that notification before entering into a predispute agreement.  Surely, there are many other practical ways to comply.

The Declaration of Brian Maas, on which plaintiffs rely to show harm, is rife with conjecture, baseless assertions, speculation, and opinion.[7]  For example, the claim that employers will lose the benefits of arbitration (*id*. ¶ 26) is highly speculative, and it is incorrect that employers would be "deprived of the benefit of predispute arbitration agreements."  (*Id*. ¶ 27.) There is no evidence that employers will be unable to obtain voluntary waivers.  Moreover, there

---

[6] Plaintiffs' motion touts the benefits of arbitration; however, this debate is not material to the issue before the Court.  Rather, AB 51 addresses the consensual waiver of employment rights and procedures, and policies that interfere with the free exercise of consent.  Thus, Defendants decline the invitation to debate the benefits of arbitration, except to note that there is ample evidence that coerced waiver agreements prevent employees from bringing claims, depresses awards, and can even be used strategically to avoid claims entirely when an employee is forced into arbitration and the employer stops paying the arbitrator.  *See, e.g.*, Cynthia Estlund, *The Black Hole of Mandatory Arbitration*, 96 N.C. L. Rev. 679 (2018); Forced Arbitration Injustice Repeal Act of 2019, H.R. 1423, 116th Cong. (1st Sess. 2019) (passed by U.S. House of Representatives on Sept. 20, 2019 - https://en.wikipedia.org/wiki/Forced_Arbitration_Injustice_Repeal_Act (last visited Dec. 27, 2019)); 2019 Cal. Stats. Ch. 870 (S.B. 707) § 1(d) ("A company's strategic non-payment of fees and costs severely prejudices the ability of employees or consumers to vindicate their rights.  This practice is particularly problematic and unfair when the party failing or refusing to pay those fees and costs is the party that imposed the obligation to arbitrate disputes.").

[7] Defendants previously filed objections to the Maas Declaration.  (ECF No. 15.)

1  is no evidence that employers will incur losses if they cannot force employees to waive labor and

2  employment protections as a condition of employment.  Nothing in AB 51 prevents employers

3  and their employees from entering into agreements to arbitrate.  Given that many employers in

4  California (including Google, Facebook, eBay, Airbnb, and Twitter) have either stopped requiring

5  or never required waivers or arbitration agreements as a condition of employment, it is difficult to

6  argue any irreparable harm.[8]  Any claim to irreparable harm is also undermined by the fact that

7  more than a million California employees in the transportation industry alone are not even subject

8  to the FAA.[9]  Yet Google, Facebook, eBay, Airbnb, Twitter, and the transportation industry

9  continue to operate without suffering the parade of horribles described in the complaint,

10  Plaintiffs' motion, and the Maas Declaration.  Plaintiffs have not met their burden of establishing

11  irreparable harm.

12       Finally, while Plaintiffs sensationalize the potential for criminal penalties resulting from

13  violations of AB 51, the same penalties adhere to nearly every violation of the Labor Code, and

14  there is no evidence of a credible threat of imminent criminal prosecution of any person under AB

15  51.  AB 51 itself does not mention criminal penalties; they are applicable because Labor Code

16  section 432.6 falls within the article subject to criminal penalties under Labor Code section 433.

17  But just like other provisions of the Labor Code, criminal penalties can be avoided by

18  compliance, and the mere possibility that criminal penalties could be imposed does not establish

19  immediate and irreparable harm.

---

20      [8] *See, e.g.*, Martins, *Forced Arbitration Under Fire as Google Axes Policy*, Business News
21  Daily, Feb. 22, 2019, https://www.businessnewsdaily.com/11302-google-axes-forced-arbitration.html (last visited on Dec. 27, 2019); Campbell, *Google employees fought for their right to sue the company — and won*, Vox, Feb. 22, 2019,
22  https://www.vox.com/technology/2019/2/22/18236172/mandatory-forced-arbitration-google-employees (last visited on Dec. 27, 2019); Martinez, *Facebook, Airbnb and eBay join Google in ending forced arbitration for sexual harassment claims*, NBC News, Nov. 12, 2018,
23  https://www.nbcnews.com/tech/tech-news/facebook-airbnb-ebay-join-google-ending-forced-arbitration-sexual-harassment-n935451 (last visited Dec. 27, 2019).
24      [9] More than 1.16 million transportation workers in California are not covered as a result of
25  the FAA exemption under 9 U.S.C. § 1 (Section 1 of the FAA says: "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of
26  workers engaged in foreign or interstate commerce"; *see also Harden v. Roadway Package Systems, Inc.*, 249 F. 3d 1137, 1140 (9th Cir. 2001)).  *See* May 2018 State Occupational
27  Employment and Wage Estimates, California, Transportation and Material Moving Occupations, line 53-0000, 2018 Bureau of Labor Statistics https://www.bls.gov/oes/current/oes_ca.htm#53-
28  0000 (last visited on Dec. 27, 2019).

Defs.' Opp'n to Mot. Preliminary Inj. (2:19-cv-02456-KJM)

1    *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013), where the district court

2    enjoined an Arizona statute criminalizing the harboring and transporting of unauthorized aliens

3    within Arizona, is distinguishable.  In that case, the Ninth Circuit concluded that the Arizona law

4    was both void for vagueness and clearly preempted by federal law, and there was evidence of an

5    ongoing violation of the law by a church pastor who provided transportation and shelter to

6    persons seeking sanctuary in her church on a daily basis, including undocumented aliens, who

7    made up 80 percent of her congregation.  *Id.* at 1012, 1014-15.  Accordingly, it was reasonably

8    certain that if the state law were not enjoined, the pastor would be subject to criminal prosecution.

9    *Id.* at 1014-15, 1029.  This "threat of state prosecution for crimes that conflict with federal law"

10   was credible, and because every other *Winter* factor was met, the court affirmed the district

11   court's preliminary injunction.  *Id.* at 1029.  By contrast, Plaintiffs here are unlikely to succeed on

12   the merits, and have not testified that they intend to violate AB 51.  They are not "under the threat

13   of state prosecution for crimes that conflict with federal law."  *Id.* at 1029.  Indeed, Brian Maas

14   and his organization are advising members not to include arbitration in their employment

15   applications and employment agreements at all, "unless and until a court enjoins the enforcement

16   of AB 51."  (Maas Decl. ¶ 30.)  Although, as previously noted, this would not be necessary to

17   comply with AB 51, it is one way to avoid any potential violation of AB 51, and is evidence

18   tending to show that Plaintiffs are not under the imminent threat of criminal prosecution.  And, as

19   a practical matter, investigations and prosecutions take time, and the hypothetical harm from

20   potential violations by as-yet unidentified persons is not imminent or certain.

21   **III.    PLAINTIFFS CANNOT MEET THEIR BURDEN TO SHOW THAT THE BALANCE OF
22              EQUITIES TIPS IN THEIR FAVOR AND THAT AN INJUNCTION IS IN THE PUBLIC
            INTEREST.**

23           In exercising sound discretion, a district court "must balance the competing claims of

24   injury and consider the effect of granting or withholding the requested relief," paying "particular

25   regard for the public consequences in employing the extraordinary remedy of injunction."

26   *Winter*, 555 U.S. at 24 (quotation marks and citation omitted).  "The public interest analysis for

27   the issuance of a preliminary injunction requires [the Court] to consider whether there exists some

28   critical public interest that would be injured by the grant of preliminary relief."  *Indep. Living*

12

Defs.' Opp'n to Mot. Preliminary Inj. (2:19-cv-02456-KJM)

1    *Ctr., So. Cal. v. Maxwell-Jolly,* 572 F.3d 644, 659 (9th Cir. 2009), *vacated and remanded on*

2    *other grounds*, 132 S. Ct. 1204 (2012).

3          "Any time a State is enjoined by a court from effectuating statutes enacted by

4    representatives of its people, it suffers a form of irreparable injury." *Abbott v. Perez*, 138 S.Ct.

5    2305, 2324 n.17 (2018) ("the inability to enforce its duly enacted plans clearly inflicts irreparable

6    harm on the State") (citation omitted).  Even after fully briefing and arguing the motion for

7    temporary restraining order (ECF Nos. 5-1, 18), Plaintiffs have not addressed that, as a matter of

8    law, the State would suffer irreparable harm were AB 51 enjoined.

9          In addition, an injunction prohibiting the enforcement of AB 51 would run counter to the

10   public interest, because it would license employers to coerce the waiver of legal protections and

11   remedies, a concept many California companies explicitly reject.[10]  It is in the public interest that

12   agreements to waive important state law protections are consensual, as AB 51 requires.  Because

13   the Supreme Court has held time and again that "[a]rbitration is strictly a matter of consent,"

14   *Lamps Plus*, 139 S. Ct. at 1415, it would run against the public interest to enjoin enforcement of

15   AB 51.

16         The public interest is against forced arbitration, as the trend to eliminate it grows.  For

17   instance, in a non-partisan letter, all 50 State Attorneys General asked Congress to prohibit forced

18   arbitration in the context of sexual harassment claims.  *See* Peck, *All 50 State AGs Demand An*

19   *End To 'Culture Of Silence' Surrounding Sexual Harassment*, Huffington Post, Feb. 13, 2019,

20   https://www.huffpost.com/entry/attorneys-general-forced-

21   arbitration_n_5a83484fe4b0cf06751f5abe (last visited on Dec. 27, 2019).  And on September 20,

22   2019, the United States House of Representatives passed the Forced Arbitration Injustice Repeal

23   (FAIR) Act of 2019, H.R. 1423, 116th Cong. (1st Sess. 2019), which is now before the Senate.[11]

24

25         [10] *See* Martinez, *Facebook, Airbnb and eBay join Google in ending forced arbitration for sexual harassment claims*, NBC News, Nov. 12, 2018, https://www.nbcnews.com/tech/tech-

26   news/facebook-airbnb-ebay-join-google-ending-forced-arbitration-sexual-harassment-n935451 (last visited Dec. 27, 2019).

27         [11] The text and other information about the FAIR Act can be found at https://www.congress.gov/bill/116th-congress/house-

28   bill/1423/text?q=%7B%22search%22%3A%5B%22H.R.+1423%22%5D%7D&r=1&s=2 (last visited on Dec. 27, 2019).

13

The express purposes of the FAIR Act are to "(1) prohibit predispute arbitration agreements that force arbitration of future employment, consumer, antitrust, or civil rights disputes; and (2) prohibit agreements and practices that interfere with the right of individuals, workers, and small businesses to participate in a joint, class, or collective action related to an employment, consumer, antitrust, or civil rights dispute." *Id.* The passage of the FAIR Act by the House of Representatives is further evidence that the prohibition on policies requiring waivers of labor and employment rights at issue in AB 51, which does not affect the formation, validity, or enforcement of employment contracts or arbitration clauses as the FAIR Act does, is not against public policy or the public interest. Similarly, in the National Labor Relations Act, 29 U.S.C. § 151, Congress found that:

> The inequality of bargaining power between employees who do not possess full freedom of association or actual liberty of contract and employers who are organized in the corporate or other forms of ownership association substantially burdens and affects the flow of commerce, and tends to aggravate recurrent business depressions, by depressing wage rates and the purchasing power of wage earners in industry and by preventing the stabilization of competitive wage rates and working conditions within and between industries.

Consistent with these congressional findings, the California Legislature has expressly stated it is the public policy of California that "[n]egotiation of terms and conditions of labor should result from voluntary agreement between employer and employees." Cal. Lab. Code § 923. And these legislative declarations are consistent with the Supreme Court's ongoing admonitions in *Lamps Plus*, *Stolt-Nielsen, Volt Information Sciences, Howsam, First Options of Chicago, Mastrobuono, Mitsubishi Motors Corporation,* and other decisions, regarding the importance of consent at the outset of an arbitration agreement.

Weighing employer policies that coerce the waiver of employment and labor rights as a condition of employment against consensual waiver tips the balance of equities against issuance of a preliminary injunction. Because Plaintiffs cannot establish the third and fourth elements of the *Winter* analysis, the motion for preliminary injunction should be denied.

14

| | |
|---|---|
| 1 | **CONCLUSION** |
| 2 | For the reasons set forth above, Plaintiffs' motion for preliminary injunction should be |
| 3 | denied. |

Dated:  December 27, 2019                              Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
TAMER PACHTER
Supervising Deputy Attorney General

*/ s /  Chad A. Stegeman*
CHAD A. STEGEMAN
Deputy Attorney General
*Attorneys for Defendants Xavier Becerra,*
*Lilia García-Brower, Julie A. Su, and*
*Kevin Kish, in their official capacities*

SA2019106348
95329181.docx