1  XAVIER BECERRA, State Bar No. 118517
   Attorney General of California
2  TAMAR PACHTER, State Bar No. 146083
   Supervising Deputy Attorney General
3  CHAD A. STEGEMAN, State Bar No. 225745
   Deputy Attorney General
4    455 Golden Gate Ave., Ste. 11000
     San Francisco, CA  94102-7004
5    Telephone:  (415) 510-3624
     Fax:  (415) 703-5843
6    E-mail:  Chad.Stegeman@doj.ca.gov
   *Attorneys for Defendants Xavier Becerra, Lilia*
7  *Garcia-Brower, Julie A. Su, and Kevin Kish, in their*
   *official capacities*

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10                            SACRAMENTO DIVISION

11

12

13  **CHAMBER OF COMMERCE OF THE**               2:19-cv-02456-KJM-DB
    **UNITED STATES OF AMERICA, et al.,**
14
                                    Plaintiffs,
15                                                **DEFENDANTS' SUPPLEMENTAL**
                                                  **BRIEF IN OPPOSITION TO**
16          v.                                    **PLAINTIFFS' MOTION FOR**
                                                  **PRELIMINARY INJUNCTION**
17  **XAVIER BECERRA, LILIA GARCIA-**
    **BROWER, JULIE A. SU, and KEVIN**           Date:        January 10, 2020
18  **KISH, in their official capacities,**       Time:        10:00 a.m.
                                                  Location:    Courtroom 3, 15th Flr
19                                 Defendants.     Judge:       Kimberly J. Mueller

20                                                Action Filed:  December 9, 2019

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

I.    Plaintiffs Have No Private Right of Action that Supports a Claim under Section 1983, and the Court Should Not Extend Its Equitable Powers to Create a Right that Does Not Otherwise Exist. .................................................................................. 2

II.    Plaintiffs Have Not Demonstrated Standing. ................................................................ 5

III.    The Statute May Be Severed and any Injunction Should Be Limited to Instances Where the FAA Applies. ............................................................................................. 9

CONCLUSION .................................................................................................................... 11

1

# TABLE OF AUTHORITIES

2

**Page**

3  CASES

4  *Alexander v. Sandoval*
5      523 U.S. 275 (2001) ..................................................................................................3, 5

6  *Ariz. Right to Life Political Action Comm. v. Bayless*
    320 F.3d 1002 (9th Cir. 2003) ..................................................................................9

7
*Armstrong v. Exceptional Child Center, Inc.*
8      575 U.S. 320 (2015) ............................................................................................2, 3, 4

9  *AT&T Mobility LLC v. Concepcion*
10      563 U.S. 333 (2011) ..................................................................................................3

11  *Barry v. Lyon*
    2015 U.S. Dist. LEXIS 174347 (E.D. Mich. June 5, 2015) ......................................4

12
*Blessing v. Freestone*
13      520 U.S. 329 (1997) ..................................................................................................2

14  *Cal. Redevelopment Ass'n v. Matosantos*
15      53 Cal. 4th 231 (2011) ............................................................................................10

16  *Cent. Delta Water Agency v. United States*
    306 F.3d 938 (9th Cir. 2002) ....................................................................................6

17
*Chapman v. Houston Welfare Rights Org.*
18      441 U.S. 600 (1979) ..................................................................................................2

19  *City of Los Angeles v. Lyons*
20      461 U.S. 95 (1983) ....................................................................................................8

21  *Dennis v. Higgins*
    498 U.S. 439 (1991) ..................................................................................................2

22
*Douglas v. Independent Living Center of Southern California, Inc.*
23      565 U.S. 606 (2012) ..................................................................................................2

24  *First Options of Chicago, Inc. v. Kaplan*
    514 U.S. 938 (1995) ..............................................................................................2, 5
25
*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*
26      2015 WL 3936346 (E.D.N.Y. June 26, 2015) ..........................................................4

27  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
28      528 U.S. 167 (2000) ..................................................................................................6

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Golden State Transit Corp. V. City of Los Angeles*
    493 U.S. 103 (1989)........................................................................................................2

4

*Granite Rock Co. v. Teamsters*
    561 U.S. 287 (2010)........................................................................................................2

5

6

*Harden v. Roadway Package Systems, Inc.*
    249 F. 3d 1137 (9th Cir. 2001)....................................................................................10

7

8

*Hedges v. Dixon County*
    150 U.S. 182 (1893).......................................................................................................4

9

*Howsam v. Dean Witter Reynolds, Inc.*
    537 U.S. 79 (2002)..........................................................................................................2

10

11

*Kehr v. Smith Barney, Harris Upham & Co.*
    736 F.2d 1283 (9th Cir. 1984)........................................................................................3

12

13

*Krottner v. Starbucks Corp.*
    628 F.3d 1139 (9th Cir. 2010).....................................................................................6, 8

14

15

*Lamps Plus, Inc. v. Varela*
    139 S. Ct. 1407 (2019) ...............................................................................................2, 5

16

17

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ....................................................................................................5, 6

18

*Luong v. Circuit City Stores, Inc.*
    368 F.3d 1109 (9th Cir. 2004).......................................................................................3

19

20

*Mastrobuono v. Shearson Lehman Hutton, Inc.*
    514 U.S. 52 (1995) ......................................................................................................2, 5

21

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*
    473 U.S. 614 (1985) ....................................................................................................2, 5

22

23

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
    460 U.S. 1 (1983) ...........................................................................................................3

24

25

*Pennhurst State School and Hospital v. Halderman*
    451 U.S. 1 (1981) ...........................................................................................................3

26

*Samsung Elecs. Am., Inc. v. Ramirez*
    No. 1:17-cv-01462-AWI-SAB, 2018 WL 2198721 (E.D. Cal. May 14, 2018)..........3

27

28

iii

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Santa Barbara Sch. Dist. v. Superior Court*
    13 Cal. 3d 315 (1975) ...................................................................................10

4

5

*Seminole Tribe of Florida v. Florida*
    517 U.S. 44 (1996) ........................................................................................4

6

7

*Smith v. Hickenlooper*
    2016 WL 759163 (D. Colo. Feb. 26, 2016) .................................................4

8

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*
    559 U.S. 662 (2010) ........................................................................................2

9

10

*Valle del Sol Inc. v. Whiting*
    732 F.3d 1006 (9th Cir. 2013) ....................................................................8, 9

11

12

*Volt Information Sciences, Inc. v. Board of Trustees of Leland
Stanford Junior Univ.*
    489 U.S. 468 (1989) .....................................................................................2, 5

13

14

**STATUTES**

15

9 United States Code § 1 ...................................................................................10

16

42 United States Code § 1983 .....................................................................1, 2, 3

17

California Labor Code
    § 432.6(a) ..............................................................................................1, 7, 11
    § 432.6(f) .......................................................................................................5
    § 432.6(i) ................................................................................................10, 11

18

19

20

Controlled Substances Act ..................................................................................4

21

Federal Arbitration Act .................................................................1, 3, 4, 10, 11
    § 2 ........................................................................................................2, 4, 5
    §§ 3 and 4 ...................................................................................................2, 4

22

23

Medicaid Act § 30(A) .........................................................................................4

24

**CONSTITUTIONAL PROVISIONS**

25

Seventh Amendment .....................................................................................1, 2, 6

26

Supremacy Clause ...........................................................................................1, 2

27

28

Defendants' Supp. Brief in Oppositio to Mot. Preliminary Inj. (2:19-cv-02456-KJM)

1

# TABLE OF AUTHORITIES
**(continued)**

2

**Page**

3

**OTHER AUTHORITIES**

4

Bureau of Labor Statistics https://www.bls.gov/oes/current/oes_ca.htm#53-0000
(last visited on January 17, 2020) .............................................................................................10

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiffs seek a broad injunction of AB 51, a law aimed at regulating employer conduct. Their claims are unlikely to succeed on the merits.  (*See* Opp'n 5-10.)  But Plaintiffs have not only failed to demonstrate a likelihood of success on the merits, they have also failed to satisfy the most basic requirements to avail themselves of this Court's jurisdiction – subject matter jurisdiction and Article III standing.  Indeed, the Court cannot reach Plaintiffs' preemption arguments at all because it lacks jurisdiction over Plaintiffs' claims.  As to subject matter jurisdiction, Section 1983 cannot be used as a vehicle to enforce the Supremacy Clause because the Supremacy Clause is not a source of individual rights.  Nor does the Federal Arbitration Act (FAA) create a right of action here.  Furthermore, in these circumstances, courts may not exercise equitable powers to create jurisdiction and new substantive rights where none exist otherwise.

Just as fundamental, Plaintiffs lack Article III standing.  No Plaintiff has come forward with a policy that mandates arbitration on a take-it-or-leave-it basis, which would subject them to Assembly Bill 51's (AB 51) penalties.  And no Plaintiff has indicated that they, as a matter of policy, terminate employees who refuse to enter into arbitration agreements, or that they categorically refuse to hire any employees who decline to enter into an arbitration agreement.  Nothing in the Maas Declaration satisfies Plaintiffs' burden to demonstrate standing.  Therefore, there is no proof of a credible threat of harm resulting from AB 51 that is actual or imminent.

Even assuming the Court has jurisdiction to enter an injunction – which it does not – an injunction must be narrowly tailored to address only the demonstrated irreparable harm.  To this end, the Court asked whether AB 51 can be severed, such that the injunction would operate against only those provisions of the bill that implicate the FAA.  AB 51 contains a severability clause that manifests the California Legislature's intent to allow severance of any provision, or a particular application of any provision, deemed unconstitutional.  Even the broadest possible reading of FAA preemption would not render AB 51 unenforceable in all its applications.  Therefore, if the Court issues an injunction, it may only enjoin enforcement of Section 432.6(a), the focus of this litigation, insofar as it applies to policies of forced arbitration, as it has done in its temporary restraining order.  (*See* Minute Order, ECF No. 33.)

1

1

**I.    PLAINTIFFS HAVE NO PRIVATE RIGHT OF ACTION THAT SUPPORTS A CLAIM UNDER SECTION 1983, AND THE COURT SHOULD NOT EXTEND ITS EQUITABLE POWERS TO CREATE A RIGHT THAT DOES NOT OTHERWISE EXIST.**

2

3    To seek redress for a legal wrong under 42 United States Code section 1983, "a plaintiff

4 must assert the violation of a federal right, not merely a violation of federal law." *Blessing v.*

5 *Freestone*, 520 U.S. 329, 340 (1997).  Plaintiffs apparently assert that the Supremacy Clause

6 provides the necessary federal right, but it is settled law that the Supremacy Clause does not

7 confer any "rights, privileges, or immunities" within the meaning of Section 1983.  *Dennis v.*

8 *Higgins*, 498 U.S. 439, 450 & n.8 (1991); *see also Armstrong v. Exceptional Child Center, Inc.*,

9 575 U.S. 320, 324-25 (2015) (Supremacy Clause is not the source of any federal rights, and does

10 not create a cause of action); *Douglas v. Independent Living Center of Southern California, Inc.*,

11 565 U.S. 606, 618 (2012) (the Supremacy Clause is not a source of any federal rights); *Golden*

12 *State Transit Corp. V. City of Los Angeles*, 493 U.S. 103 (1989); *Chapman v. Houston Welfare*

13 *Rights Org.*, 441 U.S. 600, 615 (1979).

14    Plaintiffs also identify no separate right under the FAA that would allow them to bring a

15 Section 1983 claim.  Plaintiffs assert that they will have "to forgo their rights under the [FAA],"

16 (Compl. ¶ 88), but the FAA does not grant any private right of action to Plaintiffs, let alone an

17 affirmative right to force arbitration as a condition of employment.[1]  Instead, the FAA provides

18 specific procedural mechanisms to allow plaintiffs to stay proceedings and compel arbitration

19 under Sections 3 and 4 of the FAA.  *See* 9 U.S.C. §§ 3, 4.  No affirmative right under Section 2 is

20 available, particularly where there is no actual agreement at issue.

21    In determining whether a private right of action exists under a federal statute, courts must

22 determine "whether the provision in question creates obligations binding on the governmental

23

24    [1] Indeed, ensuring that waivers of constitutional rights, such as the right to civil trial by jury under the Seventh Amendment, are consensual is at the fore of the Supreme Court's

25 "consent, not coercion" mantra; the right of employees to choose whether or not to waive such rights is foundational to the FAA.  *See, e.g., Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415–16

26 (2019); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010); *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299 (2010); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79,

27 83 (2002); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995); *Volt Information Sciences, Inc. v. Board*

28 *of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); and *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

2

unit or rather 'does no more than express a congressional preference for certain kinds of treatment.'" *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 19 (1981).  The FAA was designed to curb "widespread judicial hostility to arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011), but Section 2's language focuses on contract validity and enforceability.  It contains no language regulating the state, does not create any "obligations" incumbent on the state, and does not refer to any group of protected individuals. *See Alexander v. Sandoval*, 523 U.S. 275, 289 (2001) ("Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'").  As explained in further detail in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983):

> The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction.  It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976 ed., Supp. IV) or otherwise.  Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue. *E.g., Commercial Metals Co. v. Balfour, Guthrie, & Co.*, 577 F.2d 264, 268–269 ([5th Cir.] 1978), and cases cited.  Section 3 likewise limits the federal courts to the extent that a federal court cannot stay a suit pending before it unless there is such a suit in existence.

The FAA does not independently create subject matter jurisdiction and, absent a federal question or diversity jurisdiction, a case based merely on the FAA should be dismissed. *See Luong v. Circuit City Stores, Inc*., 368 F.3d 1109, 1111 (9th Cir. 2004) (citing *Cone Mem'l Hosp*., 460 U.S. at 25 n. 32); *Kehr v. Smith Barney, Harris Upham & Co*., 736 F.2d 1283, 1287–88 (9th Cir. 1984); *Samsung Elecs. Am., Inc. v. Ramirez*, No. 1:17-cv-01462-AWI-SAB, 2018 WL 2198721, at *6 (E.D. Cal. May 14, 2018), *aff'd*, 777 F. App'x 243 (9th Cir. 2019).  The FAA confers no rights to support a claim under Section 1983.

Furthermore, while equitable relief is available "to enjoin unconstitutional actions by public officials" apart from Section 1983, such relief is only available in "'a proper case.'" *Armstrong*, 575 U.S. at 327 (quoting *Carroll v. Stafford*, 3 How. 441, 463, 11 L.Ed. 671 (1845)).

3

1    This is not "a proper case" for the Court to exercise its equitable discretion.

2           The Court's power in equity is circumscribed by the principle that "equity follows the

3    law." *Hedges v. Dixon County*, 150 U.S. 182, 192 (1893).  The FAA confers no right to

4    employers to force arbitration, rather, it merely seeks to ensure enforceability of arbitration

5    agreements once entered into.  Without subject matter jurisdiction over the controversy, a court

6    cannot even consider a petition to compel arbitration under Section 4, so an extension of the FAA

7    to create a new right of action in equity to Section 2 in the absence of any arbitration agreement is

8    not appropriate.

9           Furthermore, Sections 3 and 4 of the FAA create specific procedural mechanisms for

10   enforcing arbitration agreements.  *See* 9 U.S.C. §§ 3, 4.  The establishment of Sections 3 and 4

11   evinces a congressional intent to enforce the FAA through those procedural mechanisms when an

12   actual agreement is at the center of the controversy, which also establishes Congress' intent to

13   impliedly foreclose equitable jurisdiction to expand rights under other provisions of the FAA that

14   Plaintiffs seek here.  As *Armstrong* counsels, even "[t]he power of federal courts of equity to

15   enjoin unlawful executive action is subject to express and implied statutory limitations."  575

16   U.S. at 327; *see also id.* at 328-329 (holding that private Medicaid providers could not sue to

17   enforce Section 30(A) of the Medicaid Act because Congress "implicitly preclude[d] private

18   enforcement of § 30(A)"); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 74 (1996) ("Where

19   Congress has created a remedial scheme for the enforcement of a particular federal right, we

20   have, in suits against federal officers, refused to supplement that scheme with one created by the

21   judiciary."); *Smith v. Hickenlooper*, 2016 WL 759163, at *1 (D. Colo. Feb. 26, 2016) (holding the

22   court did not have equitable jurisdiction over state law enforcement officers' claim that

23   Colorado's legalization of marijuana violated the Controlled Substances Act because enforcement

24   of the CSA was delegated to the Attorney General); *Friends of the E. Hampton Airport, Inc. v.*

25   *Town of E. Hampton*, 2015 WL 3936346, at *9 (E.D.N.Y. June 26, 2015); *Barry v. Lyon*, 2015

26   U.S. Dist. LEXIS 174347 (E.D. Mich. June 5, 2015).

27          Plaintiffs seek a novel and significant expansion of the FAA to preempt labor code

28   provisions that address employer behavior, not the enforceability of arbitration agreements.  *See*

4

1  Cal. Lab. Code § 432.6(f).  Here, there is no agreement before the Court to which Section 2 may

2  be applied.  Indeed, every other FAA preemption case decided by the Supreme Court has

3  involved an actual arbitration agreement.  Rather than point to an agreement, Plaintiffs request the

4  Court exercise its equitable power to expand the FAA, which in effect, creates new substantive

5  rights for employers under the statute.  But "private rights of action to enforce federal law must

6  be created by Congress." *Sandoval*, 532 U.S. at 286.  "Without [statutory intent], a cause of

7  action does not exist and courts may not create one, no matter how desirable that might be as a

8  policy matter, or how compatible with the statute." *Id.* at 287.   The Court should not extend its

9  equitable power to create a right that does not otherwise exist.

10       Finally, as discussed in Defendants' opposition, AB 51 applies to employer policies and

11  practices instead of arbitration agreements.  *See* Cal. Lab. Code § 432.6(f).  No language in

12  Section 2 of the FAA contemplates setting aside a state law that prohibits policies allowing for

13  the termination of a long-time employee because they refuse to sign an arbitration agreement.  In

14  fact, the Supreme Court has held time and again that "'the first principle that underscores all of

15  our arbitration decisions' is that '[a]rbitration is strictly a matter of consent.'" *Lamps Plus*, 139 S.

16  Ct. at 1415 (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299 (2010)).  The Supreme

17  Court has emphasized this "'foundational FAA principle' many times." *Id.* (quoting *Stolt-*

18  *Nielsen*, 559 U.S. at 684, and citing to *Howsam*, 537 U.S. at 83); *see also First Options of*

19  *Chicago*, 514 U.S. at 943; *Mastrobuono*, 514 U.S. at 57; *Volt Information Sciences*, 489 U.S. at

20  479; and *Mitsubishi Motors Corp.,* 473 U.S. at 626.  Ultimately, AB 51 falls outside of the reach

21  of the FAA.  (Tr. at 36:7-8, Jan. 10, 2020 hearing, ECF No. 36 ("This carves out a new path.").)

22  The Court should not extend equitable jurisdiction to this case to create new substantive rights

23  that allow Plaintiffs to "carve out a new path."

24  **II.    PLAINTIFFS HAVE NOT DEMONSTRATED STANDING.**

25       "[T]he irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*,

26  504 U.S. 555, 560 (1992), requires that a plaintiff show:

27       (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b)
     actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

28

5

1
2

traceable to the challenged action of the defendant; and (3) it is likely, as opposed
to merely speculative, that the injury will be redressed by a favorable decision.

3    *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180–81 (2000).

4    The party asserting federal jurisdiction bears the burden of establishing these requirements at

5    every stage of the litigation, as it does for "any other essential element of the case." *Cent. Delta*

6    *Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002).

7         Plaintiffs bring their case on behalf of themselves as well as their members.  (Compl. ¶¶

8    16-22.)  To demonstrate Article III associational standing, members must have suffered an injury

9    that is "actual or imminent, not conjectural or hypothetical." *Krottner v. Starbucks Corp*., 628

10   F.3d 1139, 1141 (9th Cir. 2010) (citation omitted).[2]  While this requirement can be satisfied by a

11   "credible threat of harm," that harm must be "real and immediate." *Id.* at 1143.  Plaintiffs have

12   not demonstrated a credible threat of harm to their members or themselves that is actual or

13   imminent.

14        No Plaintiff has come forward with a policy that mandates arbitration on a take-it-or-

15   leave-it basis.  No Plaintiff has indicated that they will terminate current employees that refuse to

16   enter into arbitration agreements, or that prospective employees will not be hired if they decline

17   to enter into an arbitration agreement or if they cross out an arbitration clause in their

18   employment contracts or handbooks.  And Plaintiffs have not presented evidence that their

19   members abide by such policies and practices.  Accordingly, no Plaintiff has met the burden of

20   establishing that AB 51 will harm them.

21        The Declaration of Brian Maas, President of the California New Car Dealers Association

22   (CNCDA), does not meet Plaintiffs' burden.  Maas indicates that "CNCDA has supported the

23   right of California employers to arbitrate disputes with their employees, and specifically to make

24   a predispute agreement to arbitrate a material term of employment contracts," (Maas Decl. ¶ 7),

25   but this statement does not establish any real or immediate injury or harm under AB 51.  And

26   without pointing to any foundation for his knowledge, any specific agreement, or any particular

27
28

---

[2] To the extent Plaintiffs bring suit on their own behalf, they must also establish their
individual standing on the same bases set forth in *Lujan*.  504 U.S. at 563.

6

1    member of CNCDA,[3] Maas asserts only that "many member dealers . . . incorporate CNCDA's

2    standalone arbitration agreement into their employment agreements."  (Maas Decl. ¶ 13.)

3    Although he states the form agreement is "generally provided as part of an employee handbook to

4    which the employee agrees as a condition of beginning or continuing employment," (Maas Decl.

5    ¶ 11), he offers no evidence that any of the members actually impose such requirements.  And the

6    statement in paragraph 21 of the Maas Declaration that "[a]lmost all of these members either

7    enter into arbitration agreements with their workers as a condition of employment or allow

8    workers to opt out of arbitration by taking some affirmative step (such as providing the company

9    with written notice)," is meaningless because it identifies no single company that forces its new

10   hires or current employees to enter into an arbitration agreement on a take-it-or-leave-it basis.

11   Such conjecture is insufficient to establish an imminent threat of harm from AB 51.

12       As to CNCDA's practices for its own employees, Maas states that CNCDA includes an

13   arbitration agreement "as part of its employee handbook" that "each employee is required to

14   sign," (Maas Decl. ¶ 8), but he offers no facts to establish that CNCDA would terminate the

15   employee upon a refusal to sign or that benefits would be denied in violation of Labor Code

16   section 432.6(a), or that employees would be retaliated against if they did not sign in violation of

17   Labor Code section 432.6(b).  Thus, it is questionable whether CNCDA forces its employees to

18   enter into arbitration agreements on a take-it-or-leave-it basis.  Maas also says nothing about what

19   it does with current employees engaged before the use of its handbook.  Does CNCDA require its

20   long-term employees to sign arbitration agreements on penalty of termination?  The answers to

21   these questions remain unknown.  There is simply no indication in the Maas declaration that

22   CNCDA or any of its members intend to engage in the actual conduct that is prohibited by AB 51.

23   And the other Plaintiffs offer no evidence of standing.

24       Moreover, CNCDA's "loss of resources" as a result of AB 51 mentioned in paragraph 20

25   of the Maas Declaration is speculative, particularly since the Court's temporary restraining order

26   allows enforcement of AB 51 as to non-arbitration waivers such as non-disclosure clauses, non-

27   disparagement agreements, and other types of waivers of rights, forums, and procedures

28   _____

[3] Defendants previously filed objections to the Maas Declaration.  (ECF No. 15.)

7

1  encompassed by AB 51's prohibitions, which will require new standard agreements regardless

2  what the Court does in relation to the prohibition on policies of forced arbitration.  Given

3  CNCDA's ongoing mission of providing assistance in addressing economic and regulatory

4  compliance issues, (Maas Decl. ¶ 5), updated forms, employment agreements, notices, and other

5  materials will be required to comply with the statute's current application.  Similarly, the parade

6  of horribles discussed throughout the declaration is speculative.  (Maas Decl. ¶¶ 16, 18, 19, 23-

7  28, 31-36.)  Presumably CNCDA will provide updated forms, employment agreements, notices,

8  and other materials to its members in light of the statute's current application.  Thus, the "loss of

9  resources" complaint is not well-taken because CNCDA will make modifications to its forms

10  anyway.

11          There is no arbitration agreement in the record, no employment policy that has been

12  disclosed, no example of employees that have been terminated or not hired as a result of a policy,

13  and there is no Supreme Court FAA preemption case that Defendants have found that does not

14  center around an actual arbitration agreement.  Employer policies that require waivers of rights

15  and forums, including arbitration agreements, are the focus of AB 51.  But there is no such policy

16  in the record that violates AB 51.  Unlike *Krottner*, where the theft of a laptop with employees'

17  unencrypted personal data created a "credible threat of harm" to employees, *Krottner v. Starbucks*

18  *Corp.*, 628 F.3d 1139, 1141-1142 (9th Cir. 2010), no Plaintiff has demonstrated a credible threat

19  of harm that is "both real and immediate, not conjectural or hypothetical."  *See also City of Los*

20  *Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983) ("Abstract injury is not enough.  The plaintiff

21  must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as

22  the result of the challenged official conduct and the injury or threat of injury must be both 'real

23  and immediate,' not 'conjectural' or 'hypothetical.'" (citations omitted)).  And reliance on the

24  argument that members could be subject to criminal penalties fares no better where there is no

25  concrete evidence that any member has an actual practice or policy that would violate AB 51.

26          *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013), provides an instructive

27  contrast.  In *Valle del Sol*, the district court enjoined an Arizona statute criminalizing the

28  harboring and transporting of unauthorized aliens within Arizona.  The Ninth Circuit concluded

8

1  that the plaintiff had standing because she provided evidence that she engaged in an ongoing

2  violation of the law by providing transportation and shelter on a daily basis to undocumented

3  aliens, who made up 80 percent of her congregation, seeking sanctuary in her church.  *Id.* at 1012,

4  1014-15.  This conduct fell precisely within the Arizona statute's prohibitions.  *Id.* at 1015.  The

5  court held it was reasonably certain that if the state law were not enjoined, the pastor would be

6  subject to criminal prosecution because her statements and the mission of her church demanded

7  she provide shelter and transportation to members of her congregation that needed it, including

8  undocumented individuals.  *Id.* at 1014-15, 1029.  This "threat of state prosecution for crimes that

9  conflict with federal law" was credible.  *Id.* at 1029.

10          By contrast, Plaintiffs here have not testified that they intend to violate AB 51 and that

11  there is a credible threat that the statute will be invoked against them.  *Valle del Sol*, 732 F.3d at

12  1029; *see also Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th

13  Cir. 2003).  The core mission described in the Maas Declaration will not be adversely affected by

14  AB 51, because CNCDA will continue to "support and assist new car and truck dealers in

15  California in addressing economic and regulatory compliance issues relating to their businesses."

16  (Maas Decl. ¶ 5.)  CNCDA, its members, and the other Plaintiffs are not "under the threat of state

17  prosecution for crimes that conflict with federal law" because they have not presented an actual

18  policy or practice that violates AB 51.  *Valle del Sol*, 732 F.3d at 1029.

19
20  **III.  THE STATUTE MAY BE SEVERED AND ANY INJUNCTION SHOULD BE LIMITED TO INSTANCES WHERE THE FAA APPLIES.**

21          AB 51 does not apply specifically to arbitration agreements or those subject to the FAA;

22  therefore, the statute as a whole survives.  No individual portion of the statute is wholly

23  preempted by the FAA and therefore unenforceable.  The existence of a severance clause and the

24  lack of text specific to arbitration agreements means the statute could withstand an injunction

25  limiting its application to policies outside the arbitration context or where the FAA does not

26  apply.  Therefore, an injunction resulting from a finding of FAA preemption, would have to focus

27  on the statute's application in particular instances, which the current temporary restraining order

28

9

Defendants' Supp. Brief in Opposition to Mot. Preliminary Inj. (2:19-cv-02456-KJM)

1    implicitly acknowledges.[4]  Alternatively, if Sections 432.6(a) and 432.6(c) (which adds to the

2    "condition of employment" term used in 432.6(a)), were enjoined in their entirety, Section

3    432.6(b) is completely independent of Sections 432.6(a) and 432.6(c), and would be enforceable

4    along with the remainder of the statute.

5         The existence of a severability clause "establishes a presumption in favor of severance."

6    *Cal. Redevelopment Ass'n v. Matosantos*, 53 Cal. 4th 231, 271 (2011) (citing *Santa Barbara Sch.*

7    *Dist. v. Superior Court*, 13 Cal. 3d 315, 331 (1975)).  The final determination of severability

8    depends on whether "'the remainder . . . is complete in itself and would have been adopted by the

9    legislative body had the latter foreseen the partial invalidation of the statute,'" *Santa Barbara*

10   *Sch. Dist.*, 13 Cal. 3d at 331 (quoting *In re Bell*, 19 Cal.2d 488, 498 (1942)).

11        California Labor Code Section 432.6(i) states:

12        The provisions of this section are severable.  If any provision of this section or its
          application is held invalid, that invalidity shall not affect the other provisions or
13        applications that can be given effect without the invalid provision or application.

14        If necessary, the application of Sections 432.6(a) and 432.6(c) to policies requiring forced

15   arbitration could be severed under AB 51's severability clause.  The Court acknowledged in

16   modifying its temporary restraining order (ECF No. 33) that AB 51 applies to more than just

17   hiring or employment policies requiring arbitration agreements as a condition of employment.  It

18   applies to a host of other types of waivers and to employers with employees not subject to the

19   FAA.[5]  If the Court were to find the *application* of Sections 432.6(a) and 432.6(c) to forced

20   arbitration policies unenforceable, application of those provisions to non-arbitration waivers or

21        [4] The Court's January 10, 2020 minute order clarified "that defendants are temporarily
     enjoined from enforcing AB 51 to the extent it applies to arbitration agreements covered by the
22   Federal Arbitration Act."  (ECF No. 33.)  However, AB 51 does not apply to agreements, only
     employer policies.  Accordingly, Defendants read the injunction as enjoining the prohibitions in
23   AB 51 on employer policies that require employees to enter into arbitration agreements—as
     opposed to other types of waiver agreements—as a condition of employment.  And the injunction
24   only applies to employees covered by the FAA.
         [5] More than 1.16 million transportation workers in California are not covered as a result of
25   the FAA exemption under 9 U.S.C. § 1 (Section 1 of the FAA says: "nothing herein contained
     shall apply to contracts of employment of seamen, railroad employees, or any other class of
26   workers engaged in foreign or interstate commerce"; *see also Harden v. Roadway Package
     Systems, Inc.*, 249 F. 3d 1137, 1140 (9th Cir. 2001)).  *See* May 2018 State Occupational
27   Employment and Wage Estimates, California, Transportation and Material Moving Occupations,
     line 53-0000, 2018 Bureau of Labor Statistics https://www.bls.gov/oes/current/oes_ca.htm#53-
28   0000 (last visited on January 17, 2020).

                                            10

1    employees not subject to the FAA would survive intact.  In fact, the temporary restraining order

2    already makes this distinction by enjoining the statute's application to "arbitration agreements

3    covered by the Federal Arbitration Act."  (Minute Order, ECF No. 33.)  Section 432.6(i)

4    specifically considers severability of the application of the bill, not just to severability of its

5    provisions.  Sections 432.6(a) and 432.6(c) do not specifically mention arbitration, and

6    arbitration-related terms are not grammatically, functionally, or volitionally tied to the

7    enforcement of Sections 432.6(a) and 432.6(c) in non-arbitration contexts or where the FAA does

8    not apply.  Accordingly, the Court could enjoin application of the statute in limited

9    circumstances.

10        If the Court were to find Sections 432.6(a) and 432.6(c) wholly unenforceable as a result

11   of Plaintiffs' FAA preemption challenge, the two provisions could be severed to allow for

12   enforcement of 432.6(b) and the remaining provisions.  Eliminating Sections 432.6(a) and

13   432.6(c) from AB 51, Section 432.6(b) stands independently on its own, which was the intent of

14   the California Legislature when it included the severability clause.  Specifically, 432.6(b) states:

15
16         An employer shall not threaten, retaliate or discriminate against, or terminate any
           applicant for employment or any employee because of the refusal to consent to
17         the waiver of any right, forum, or procedure for a violation of the California Fair
           Employment and Housing Act or this code, including the right to file and pursue a
18         civil action or a complaint with, or otherwise notify, any state agency, other
           public prosecutor, law enforcement agency, or any court or other governmental
19         entity of alleged violation.

20        The remaining provisions of the law do not conflict with Section 432.6(b), and Section

21   432.6(b) in no way relies on Sections 432.6(a) or 432.6(c).  It focuses on employer conduct

22   related to retaliation and discrimination where, for instance, a long-term employee is presented

23   with a waiver (including, among other things, an arbitration agreement) that they decline to sign.

24   Accordingly, in the event the Court does enjoin Sections 432.6(a) and 432.6(c), they can and

25   should be severed from the rest of the statute.

26                                    **CONCLUSION**

27        For the reasons set forth above and in Defendants' opposition to the motion for

28

                                             11

preliminary injunction, Plaintiffs' motion for preliminary injunction should be denied.  And if the

Court preliminarily enjoins any part of the statute, its order should be limited to AB 51's

application to prohibitions on forced arbitration agreements encompassed in Section 432.6(a).

Dated:  January 17, 2020                               Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
TAMER PACHTER
Supervising Deputy Attorney General

/ s /  Chad A. Stegeman
CHAD A. STEGEMAN
Deputy Attorney General
*Attorneys for Defendants Xavier Becerra,*
*Lilia García-Brower, Julie A. Su, and*
*Kevin Kish, in their official capacities*

SA2019106348
FINAL CoC Supp Brief with tables.docx

Defendants' Supp. Brief in Opposition to Mot. Preliminary Inj. (2:19-cv-02456-KJM)